## Case No. 8,030.

### LAMBSON v. BOILEAU.

[Cited in Westbrook v. Romeyn, Case No. 17,-428. Nowhere reported; opinion not now accessible.]

## Case No. 8,031.

### In re LAMMER.

[7 Biss. 269;[1] 14 N. B. R. 460; 8 Chi. Leg. News, 386; 3 Cent. Law J. 574.]

District Court, W. D. Wisconsin. Aug., 1876.

HOMESTEAD EXEMPTION—DIVISION OF BUILDING BY COURT IN BANKRUPTCY.

1. Homestead exemption, in Wisconsin, does not extend to a business block, used as a dwelling. The question is not determined by occupation, but by the character and construction of the building.

2. If there is a dwelling house and a store upon the same lot, the assignee can set off the former as a homestead.

3. The court will not divide a building and assign the bankrupt a part occupied by him.

The bankrupt, when he filed his petition, was the owner of lot 5, block 118, in the village of Menominee, 44x132 feet in size, upon which was a new brick block just finished, and an old house which had formerly stood on the site of the new block, and had been used as a dwelling house. When the block was built, the house was moved onto the back part of the lot, and placed on blocks fronting on a side street, the new block being on the front. It was repaired sometime afterwards, and the family of the bankrupt moved into it and occupied it as a dwelling house up to a short time before the filing of the petition in bankruptcy. The new block was finished for business purposes, and not as a dwelling house. There was a saloon and billiard-room in the basement, two stores on the first floor, and a public hall in the second story. The entrance to the basement and hall was on the corner outside. The bankrupt occupied one of the stores for his business as a merchant, and had offered the other store for rent up to the time he moved into it with a part of his family. The new block cost about $9,-000, and was mostly paid for out of the business of the store. The creditors, about the time it was finished, commenced pressing for their pay, and some sued him, and

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

when he filed his petition in bankruptcy his personal property was in the custody of the sheriff on execution. After his creditors commenced suing him, he placed some board partitions in one of the stores, not extending to the ceiling, and moved in there with his wife and child, leaving his father and mother, who lived with him and constituted a part of his family, in the old house. After he moved in he claimed it as his homestead. In about a month after that time he filed his petition to be declared a bankrupt. The assignee, however, refused to set off the new block as a part of his homestead, but set off the balance of the lot, including the old dwelling house and all of the lot except 44x56 feet on the front end. The bankrupt then moved the court to set aside the assignee's report, and for an order that he set off the whole lot as exempt, on the ground that it is his homestead.

E. B. Bundy, for bankrupt.
F. J. & W. C. McLean, for assignee.


HOPKINS, District Judge. The statute of this state exempts not to exceed one quarter of an acre of land in a village or city and "the dwelling house thereon," owned and occupied by the debtor as a homestead. In order to constitute a homestead under the statute, it will be seen that it must be the dwelling house of the debtor, not a store, saloon or shop; so it becomes necessary to first determine whether this block can be considered a "dwelling house" within the meaning of the statute. This is a question of fact to be ascertained from the evidence.

It is conceded that it was not built for, nor intended as, a dwelling house, which is apparent by the construction of the building itself. It has none of the conveniences or comforts of such a house, and the bankrupt himself testified that he intended to build his dwelling house on some other lots in another part of the village which he had commenced to improve with that view. So I must find that it was not built nor intended for a dwelling house, and was not suitable in its then condition for such use, and was not in any reasonable sense a dwelling house, unless a debtor arbitrarily has the right to call anything he pleases a dwelling house, and, by moving into such building, estop a court from all further inquiry into its character.

This is, substantially, the bankrupt's claim in this case. If occupation is alone to determine the question, then a grist mill, or cotton or woolen factory, or saloon, or church, may be a dwelling house and exempt as a homestead, for a party could move his family into either and live there as the bankrupt did in this store.

But I do not think the statute will allow of such a construction. It uses the words "dwelling house" in their common and ordinary sense, and to distinguish them from other kinds of buildings. Those words are used as a limitation upon the right of the debtor, and restrict his claim to that character of building.

I do not mean by this to go so far as to hold that it must be exclusively used for that purpose, but in some reasonable sense it should be susceptible of being a dwelling house.

A building may be constructed for a store and dwelling house, saloon and dwelling house, but its construction should in some manner and to some extent manifest its character of dwelling house so as to give some appearance of good faith, in calling or claiming it as such.

If this is the true meaning and construction of the statute, could this party after he had built this block for business purposes with no appearance or claim that it was to be used as his dwelling, on the eve of bankruptcy move into it, and thereby change its character and thus withdraw from the reach of his creditors that amount of his property? If he can, he had within his power the right to commit a great fraud upon his creditors, and if the law upholds such a transaction, it may be said to sanction what honesty would denounce as a great moral wrong. But I do not believe the act admits of such a construction.

This block was built mostly by goods out of the store—his creditors' property—and does any one believe that if he had told his creditors that it was to be claimed as his homestead, they would have stood by and seen him put the property to such a use? Most certainly not. He was not worth anything; he had no means to put into a homestead; he was owing more than he could pay; and having built the block under such representations to his creditors, he should be estopped from interposing a homestead claim to it just as soon as he had finished it.

They rested easy when he was building a business block with their means, for that was not placing the avails beyond their reach. Their remedy was not at all impaired by that change. But to allow him by a simple act of his will to withdraw all that property by moving his family into it and claiming it as his homestead, is too unconscionable to be sanctioned if within the power of courts to prevent it.

In this case he says this building cost him $9000, a larger sum by a good deal than the value of his other property liable to the payment of his debts. The assignee, acting upon what he supposed the better construction of the act, refused to set off the block as a dwelling house or as a part of the homestead exemption.

The bankrupt claims that the old wooden dwelling house is in bad condition, and is located amid unpleasant surroundings. The evidence shows this complaint is not wholly groundless, but he did use it as a dwelling

house as long as he meant to pay his debts, it would seem, and did not discover its defects until he conceived the idea of not paying his creditors. Then he seemed to discover that it was too poor to live in. This discovery was coeval with his intention to defraud his creditors. In his insolvency he became ambitious for a better dwelling house than when he deemed himself able to pay his debts, and hence moved into this block. It was conceded on the argument that he moved in under advice of counsel to be able to hold it as his homestead. But the wooden building was a dwelling house and the block was not, and the occupancy being commenced under such circumstances and such motives, cannot be held to accomplish the purpose designed. The fraud of the party vitiated its effect and rendered the act nugatory.

Indeed, I cannot believe from the evidence that the occupancy for residence of his family was intended to be permanent. It was a mere experiment to frighten his creditors —not bona fide, so that all the claims based upon the pretended occupancy fail for want of reality and good faith.

All such devices are plain violations of the true spirit and meaning of the homestead law. It was intended to secure a "home" for the family, and therefore exempted the "dwelling house." It was not intended as a refuge for dishonest debtors to retire to when overtaken by bankruptcy, and thereby keep their property away from their creditors.

In view of the frequent complaints that I hear against the law, I will venture to suggest that they all have their origin in the omission to prescribe a limit upon the value of the homestead to be exempted. Bankrupts too often occupy the most elegant and costly residences under claim of homestead. Those of weak moral perceptions very frequently are distinguished in that direction, and do not seem to be at all disturbed by the fact that they are built out of the property of their creditors. Such fraudulent use of their creditors' money often provokes severe comments upon our homestead law.

The supreme court of the state has often given expression to sound views on the subject, and in Casselman v. Packard, 16 Wis. 114, they decided that all the buildings on the quantity of land that might be exempted, were not exempt; that only the "dwelling house" was exempt, and stores and shops or other buildings on such land were not.

The assignee, recognizing this as the law, set off only the dwelling house. He held that the block was not a dwelling house, in which opinion I fully concur.

The bankrupt's counsel argued that the room in the block occupied by the bankrupt, could be set off, if not the whole block; that the court could divide the building horizontally and perpendicularly and give him that part, and cited Phelps v. Rooney, 9 Wis.

70, on that point. Something of that kind is said by the chief justice in his dissenting opinion, but the idea was too chimerical to find favor with that court, and until it is sanctioned by the state courts I shall not attempt its adoption here.

I place my decision on the broader ground that this new block was not a "dwelling house" in fact, and the pretended occupancy of it, as such, was not in good faith, or intended to be, nor was it intended to be permanent, and therefore no change in the real character of the building was effected by that attempt at occupation by the bankrupt.

This doctrine is not new in the federal courts in this state. In Re Wright [Case No. 18,067], the bankrupt, a few days before going into bankruptcy, sold his dwelling house and moved into his store and claimed that as a homestead, but the court disallowed the claim and held that it was intended as a fraud on the creditors, not a bona fide change. Such I think, is the case here, and therefore deny the motion to set aside the report of the assignee.