65  439
75  519
65  439|
86  327|

S. H. Parisot et al. v. T. D. Tucker, Administrator, et al.

1. Homestead. *Lot in village and field separated therefrom. Case in judgment.*

   A man owning and occupying with his family a four acre lot in a village, and conducting thereon a hotel business, and owning and cultivating seventy-four acres of land separated from such lot only by a railroad right of way and depot grounds, may hold both parcels of land as his homestead exemption, if the value thereof does not exceed $2000, under Sections 1248 and 1249, Code of 1880, the former of which allows to the head of a family "the land and buildings owned and occupied as a residence" by him, not exceeding eighty acres in quantity and $2000 in value; and the latter allows the head of a family, "residing in a city, town or village, the land and buildings owned and occupied as a residence" by him, not to exceed $2000 in value.

2. Same. *Descent to heir. Value when fixed.*

   Under Section 1277, Code 1880, which provides that exempt property shall, "on the death of the husband or wife owning it," descend to the heirs, the extent in value of a homestead descending to the heirs of a decedent is fixed by the value thereof at the time of the ancestor's decease.

APPEAL from the Chancery Court of Yazoo County.

Hon. E. G. Peyton, Chancellor.

N. Birmingham died in May, 1882. At the time of his death he was residing with his family in the village called Vaughn's, in Yazoo County, upon a four-acre lot of land, on which were situated a hotel, stables and such other buildings as he used in conducting the business of a hotel-keeper. "Adjoining this four-acre lot," as shown by the testimony in this case, but separated from it by a railroad track, right of way, and ground owned and used by the railroad company for depot purposes, was another tract of land owned by Birmingham, and cultivated by him in his lifetime.

In September, 1883, Birmingham's estate was declared insolvent, and the administrator thereafter sold all the property of the estate for the benefit of the creditors, except the tracts of land above mentioned, which the heirs claimed had descended to them as the exempt homestead of the decedent.

Thereupon, in August, 1885, S. H. Parisot and others, cred-

65 Miss.—29.

itors of the decedent, exhibited this bill against T. D. Tucker, administrator, and the heirs of the decedent's estate, asking that there be allotted " to the heirs of said N. Birmingham a homestead in said Vaughn Station lot, not exceeding in value the sum of two thousand dollars; and that said 74 acre tract of land and the residue of the Vaughn Station lot, after the allotment of the homestead as aforesaid, be sold for the payment of the debts of said N. Birmingham, deceased."

The defendants answered, claiming the house and lot and the 74 acre tract as the homestead, and exempt from the claims of creditors of the deceased Birmingham.

The evidence was conflicting as to the value of the property so claimed as exempt at the time of Birmingham's death, some witnesses putting its value as high as $6000, while others put it at $2000. But the evidence showed that since Birmingham's death the whole of the property in controversy has depreciated in value. The chancellor dismissed the bill of complainants, and they appealed.

Section 1248 of the Code of 1880 is as follows : .

" Every citizen of this State, male or female, being a householder and having a family, shall be entitled to hold, exempt from seizure or sale under any execution or attachment, the land and buildings owned and occupied as a residence by such debtor ; provided the quantity of land shall not exceed eighty acres, nor the value thereof, inclusive of improvements, the sum of two thousand dollars."

Section 1249 declares that,

" Every person, being a householder, and having a family, residing in any city, town or village, shall be entitled to hold, exempt from seizure or sale, under any execution or attachment, the land and buildings owned and occupied as a residence, by such debtor, nor to exceed in value two thousand dollars."

Section 1277 provides that, " The property exempted by law from sale under execution or attachment, shall, on the death of the husband or wife owning it, descend to " the heirs of the decedent.

J. C. Prewitt and T. H. Campbell, for the appellants.

At the time of N. Birmingham's death in May, 1882, his

property decended to his heirs subject to his debts, except so much thereof as was exempted by law to the said Birmingham.

What is that which descends to the heir free from the debts of the ancestor? Section 1277 of the Code of 1880 answers this question as follows: "The property exempted by law from sale under execution or attachment shall on the death of the husband or wife descend * * * * * * etc." What property was exempted to N. Birmingham at the time of his death? Clearly only the house and four acre lot in Vaughn's Station, and that only to the extent of $2000.

The valuation of the property at the time of Birmingham's death fixed the rights of creditors and heirs.

*Bowman & Bowman* on the same side.

The statute provides for two kinds of homesteads: one in the country, consisting of the land and buildings owned by the debtor not exceeding 80 acres of land or two thousand dollars in value, and the other in cities, towns and villages, not exceeding two thousand dollars. Code 1880, §§ 1248, 1249. In this case the heirs of Birmingham claim both these homesteads. If the seventy-four acres of land had been distant three or four miles from Vaughn's Station, they would not have been entitled to it, and simply because it happens to be adjoining the lot on which the homestead is situated does not alter the case in the least. The seventy-four acres was a farm, used as such—Birmingham's residence was in a village where he was carrying on a totally different business, and there only could he have his homestead.

We think that appellees are entitled only to so much of the property as was worth $2000 at the time of their ancestor's death.

*Hudson & Holt*, for the appellees.

There are two questions involved in this case:

1. Whether or not appellees, heirs of N. Birmingham, deceased, are entitled to 80 acres of land as a homestead, in spite of it being situated in a village, provided it is not worth more than $2000.

2. At what time is the value of the premises to be considered, at the death of the ancestor, or when the claim is set up by the heirs, or rather, when the creditors seek to have the

homestead determined by the Court.—We set out with this proposition. Under our statute as to quantity of the homestead and value (Sections 1248 and 1249 of the Code of 1880) a homestead of 80 acres might be claimed in the middle of a city, *provided* it was not worth exceeding $2000. There is nothing in the law to the contrary.

The fact that the land is separated into two parcels by the railroad makes no difference, as this court has settled in the case of *Acker* v. *Trueland*, 56 Miss., p. 30, the street of the town severing or separating the property in that case. Counsel seem to think there is a great deal in the question of value at the time of the death of N. Birmingham, but when properly considered the fallacy of their position on this point is manifest. Suppose Birmingham had not died, and appellant had obtained judgment against him and proceeded to subject his homestead, at what time would the value be taken into consideration? Unquestionably whenever the creditors undertook to subject the property to the judgments, not when the judgments were obtained, or even when a levy was actually made under execution. The debtor can, as this court well knows, move on and claim a homestead at any time before sale under exemption, and the value at the time the property is sought to be subjected would control.

COOPER, C. J., delivered the opinion of the Court.

The heirs at law of Birmingham took by descent freed from the claims of his creditors so much of the land upon which he resided at his death as did not exceed 80 acres in extent or $2000 in value.

If an execution had been levied on the lands during Birmingham's life the valuation at the time of allotment of the homestead would have prevailed, and if the part alloted had thereafter increased in value there could have been a new allotment so as to keep the property within the limits of the law; but his death is made by the statute the point of time at which the right of the heir at law is to be measured, and a subsequent appreciation or depreciation in value would not change the allotment.

But it is not clear from the conflicting evidence that the value of the whole land exceeded $2000 at the date of Birmingham's death, and it is certain that the whole was less than 80 acres.

The decree of the chancellor is therefore affirmed.