### KELLY v. SPARKS et ux.

#### (Circuit Court, D. Kansas. January 26, 1893.)

HOMESTEAD—ACQUISITION BY INSOLVENT—VALIDITY.

A homestead claim of 160 acres of land, together with extensive improvements thereon, purchased and improved by an insolvent debtor with moneys realized by the sale and disposal of nonexempt assets, is exempt, under Const. Kan., exempting such land and all improvements thereon from forced sale under process, though such purchase, improvements, and claim were with knowledge by the debtor of his insolvency, and fraud cannot be imputed to such act.

In Equity. Bill by James C. Kelly against Richard M. Sparks and Mary Sparks, his wife, to subject real estate claimed as a homestead to the payment of a judgment. Dismissed.

David Overmeyer and J. S. Brown, for complainant.
Hurd & Dunlap and E. Sample, for defendants.

FOSTER, District Judge. This is a proceeding in the nature of a creditors' bill to subject real estate occupied by defendants as a homestead to the payment of a judgment recovered by complainant, in the district court of Kingman county at the May term, 1887, for $23,557, a transcript of which was subsequently filed in Barbour county, where said land is situated. It is alleged in the bill that said Richard M. Sparks is now, and was at the time said debt was contracted and said real estate purchased, insolvent, and largely indebted to various parties; and that between the months of November, 1885, and May, 1886, said defendant Richard M. Sparks sold and disposed of a large amount of his property, real and personal, which was subject to the payment of his debts, with the purpose and intent to hinder, delay, and defraud this complainant and his other creditors; and that said Sparks, with the said fraudulent intent, and to keep the proceeds of said sale from being subjected to the payment of his just debts, did about April, 1886, with said proceeds purchase the land in controversy, 160 acres, and did expend large sums of money, to wit, $5,000, in erecting buildings and making other improvements on said land, and now occupies and claims the same as his homestead; that said land was so purchased and improvements made by said defendant with the intent and purpose of defrauding his creditors by covering up and concealing his money and property under a homestead claim, and thereby

placing it beyond the reach of his creditors with the fraudulent intent aforesaid, etc., and praying that said land may be ordered sold, and the proceeds subjected to the payment of the complainant's judgment. For answer to said bill, defendants admit the complainant's debt, and that defendant R. M. Sparks is insolvent, but deny he was insolvent when said debt was contracted, and deny that he disposed of his property with intent to hinder, delay, or defraud his creditors, or that he purchased said land and made the improvements thereon with such intent, but admit that he purchased said land, and improved the same, and now occupies and claims the same as a homestead, and aver that it is exempt from the payment of complainant's debt, etc. The constitution of the state of Kansas contains the following provision:

"A homestead to the extent of 160 acres of farming land, or one acre within the limits of an incorporated town or city, occupied as the residence by the family of the owner, together with all the improvements on the same, shall be exempt from forced sale under any process of law," etc.

It will be observed there is no limit to the value of the improvements which may be placed upon the homestead by the debtor. The testimony in this case shows the land and the improvements to be worth about $7,000; that there is a mortgage on the same for about $1,500; that defendant's family consists of a wife and several children, and the family are now occupying the premises as a homestead. The complainant's debt had its origin in Lafayette county, Mo., where both of said parties formerly resided. Complainant at various times during the years 1882 to 1885 signed as surety for defendant several promissory notes to banks and individuals at Lexington, Mo., which notes complainant was afterwards compelled to pay. The proceeds of these notes were used by defendant R. M. Sparks in dealing in land and live stock in Missouri, Colorado, and Kansas. About the years 1882 and 1883 said defendant came to Kansas, and purchased a large amount of land in Barbour county, and stocked it with cattle and sheep, and carried on the business of buying, feeding, and selling live stock until the fall of 1885, when he failed, and became insolvent. About that time he sold his ranch and all his stock, and used about $7,000 of the proceeds in purchasing and improving the place he now occupies as a homestead. The improvements cost about $4,000. At that time he knew he was insolvent, and in securing the homestead doubtless had in view primarily the purpose of providing a home for himself and family, which should be exempt from the claims of his creditors. The dealings of said defendant were so various, and his loans of money so numerous, and extending over several years' time, it is impossible to trace the funds used in purchasing and improving the homestead to any particular source, although it fairly appears that some of the purchase money came indirectly from the money realized on these notes. At about the time this debt was incurred, Sparks was supposed to be in good financial circumstances. At that time he owned and lived on a valuable homestead in Lafayette county, Mo., valued at about $20,000, and he was supposed to be worth about $50,000.

The question presented in this case is simply this: Knowing himself to be insolvent, and unable to pay his debts, at the time he purchased the property, could he convert his assets, in the manner stated, into a homestead, and thus place it beyond the reach of his creditors? This question has been before the courts, and has been repeatedly adjudicated, but unfortunately the adjudications are not entirely in harmony. In Pratt v. Burr, 5 Biss. 36, where a defendant, a merchant in failing circumstances, and being insolvent, purchased a large amount of goods on credit, and soon thereafter transferred the goods, and received in part payment a house and lot, which was claimed as a homestead, the court held the transfer of property was made to defraud creditors, and that the homestead claim could not be allowed. To the same effect, see Long v. Murphy, 27 Kan. 380; Riddell v. Shirley, 5 Cal. 488. An insolvent debtor claimed a homestead exemption in a stock of goods transferred to hinder and delay creditors, and the claim was disallowed. Rose v. Sharpless, 33 Gratt. 153. The fraudulent concealment of a debtor's property is a bar to defendant's right under the homestead law. Emerson v. Smith, 51 Pa. St. 90. Per contra, in Cipperly v. Rhodes, 53 Ill. 347, it was held that an insolvent debtor could purchase and hold a homestead, although it withdrew assets subject to the payment of his debts. A late case in point, and a very strong one in favor of an insolvent debtor's right to acquire a homestead, is by the supreme court of Minnesota,—Jacoby v. Distilling Co., 43 N. W. Rep. 52,—in which the court says:

"A debtor, in securing a homstead for himself and family by purchasing a house with nonexempt assets, * * * takes nothing from his creditors which the law gives to them, or in which they have any vested right. * * * It is a right which the law gives him, subject to which every one gives him credit, and fraud can never be predicated on an act which the law permits."

—Citing Tucker v. Drake, 11 Allen, 145; O'Donnell v. Segar, 25 Mich. 367; Culver v. Rogers, 28 Cal. 521; Randall v. Buffington, 10 Cal. 491. In King v. Goetz, 11 Pac. Rep. 658, the supreme court of California uses the following language:

"The law, for wise and beneficent purposes, secures to the family a right to have a homestead selected in the manner indicated by the statute, and this right may be exercised as well against existing as against future creditors without the imputation of fraud for so doing."

In Backer v. Meyer, 43 Fed. Rep. 704, Judge Caldwell uses the following language:

"The homestead of the defendant was purchased by Meyers after his insolvency, in the name of his wife; but this fact does not make it any the less the family homestead," etc.

See, also, Thomp. Homest. §§ 305–307, and cases cited.

It seems to be well settled on principle and the preponderance of authority that an insolvent debtor, knowing himself to be insolvent, may acquire a homestead for himself and family, and hold the same exempt from his creditors, although purchased with nonexempt assets, and that fraud cannot be imputed to such act. The beneficent object of a wise and just homestead law must be conceded; but it seems harsh and unjust that a debtor may live in wealth, un-

der the provisions of a homestead law, while his creditors are kept out of what is justly due them; but that matter rests in the discretion of the lawmaking power, and credit is given the debtor in full view of this comprehensive exemption. It follows that this bill cannot be sustained, and must be dismissed.