### FIRST NAT. BANK OF HUMBOLDT, NEB., v. GLASS et al.

(Circuit Court of Appeals, Eighth Circuit. March 22, 1897.)

No. 840.

1. HOMESTEAD—FRAUDULENT CONVEYANCE.

The use of property that is not exempt from execution by a debtor to procure the title to a homestead in his own name is not a fraud upon his creditors. The use of unexempt property by a debtor to vest the title to such a homestead in the name of his wife is held to be a fraud upon creditors in the state of Minnesota, but, under the construction of the constitution of Kansas adopted by the supreme court of that state, it is immaterial whether the debtor takes the title in his own name or in that of his wife. A homestead in Kansas, therefore, purchased with unexempt property in Nebraska, which belonged to a debtor who had removed from the latter state to Kansas, is exempt from execution, although the title to it is taken in the name of his wife.

2. SAME—FEDERAL COURTS—STATE DECISIONS.

Decisions of the highest court of a state as to the homestead exemption under the constitution and statutes of that state establish a rule of property there, binding on the federal courts, where no question under the constitution and laws of the nation and no question of general or commercial law is involved.

Appeal from the Circuit Court of the United States for the District of Kansas.

This appeal challenges a decree which sustained a demurrer to a bill brought by a judgment debtor to subject a homestead, which the debtor had bought and caused to be conveyed to his wife, to the payment of the judgment. The bill disclosed these facts: The statutes of Nebraska exempt from judicial sale a homestead not exceeding in value $2,000, consisting of a dwelling house in which the claimant resides and the land on which the house is situated, not exceeding 160 acres in extent. Consol. St. Neb. 1891, c. 19, p. 430. The constitution of the state of Kansas exempts from forced sale under process of law

a homestead not exceeding 160 acres of farming land, or one acre within the limits of an incorporated town or city, and all the improvements thereon, when it is occupied as a residence by the family of the owner, whatever its value may be. Const. Kan. art. 15, § 9; 1 Gen. St. 1889, par. 235. From May 4, 1892, until March 22, 1894, the appellee, John F. Glass, owned, and with his wife, Harriet H. Glass, resided upon and occupied, 160 acres of land in the state of Nebraska, as their homestead. In May, 1892, Glass purchased of one Gravatte some fruit trees which were planted on his farm, and which enhanced its value $3,000. He gave Gravatte a span of horses and six of his promissory notes for these trees. The appellant, the First National Bank of Humboldt, Neb., purchased four of these notes before their maturity, and on November 19, 1894, obtained a judgment thereon for $2,278.44 against John F. Glass, in an action which it had commenced in the district court of Pawnee county, in the state of Nebraska, on June 24, 1893. Glass was insolvent, and he had no property except the farm which he occupied as his homestead. On March 22, 1894, he sold and conveyed this farm to one Huff for $6,100, and with that money he bought 160 acres of farming land in Franklin county in the state of Kansas, and caused the vendor to convey it to his wife. He and his wife immediately took possession of it, and have ever since resided upon, occupied, and claimed it as their homestead. The bank caused an execution to be issued on its judgment in 1895, and it was returned nulla bona. It then brought an action upon this judgment, and obtained a judgment in that action, and a return of execution unsatisfied, in the district court of Franklin county, in the state of Kansas. Thereupon it exhibited its bill in the court below, and alleged, in addition to the foregoing facts, that the appellees sold their farm in Nebraska, secretly fled to the state of Kansas, and purchased and took possession of their farm in that state with the intent and for the purpose of cheating and defrauding the bank out of its claim against Glass, and for the purpose of preventing it from collecting its judgment from the farm in Nebraska, which was worth $4,100 more than the value of an exempt homestead, under the statutes of that state. The bank prayed for the sale of the farm in Kansas, and for the application of the proceeds of the sale to the payment of its judgment.

J. W. Deford, for appellant.

C. A. Smart and H. C. Mechem, for appellees.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

An insolvent debtor may use with impunity any of his property that is free from the liens and the vested equitable interests of his creditors to purchase a homestead for himself and his family in his own name. If he takes property that is not exempt from judicial sale and applies it to this purpose, he merely avails himself of a plain provision of the constitution or the statute enacted for the benefit of himself and his family. He takes nothing from his creditors by this action in which they have any vested right. The constitution or statute exempting the homestead from the judgments of creditors is in force when they extend the credit to him, and they do so in the face of the fact that he has this right. Nor can the use of property that is not exempt from execution to procure a homestead be held to be a fraud upon the creditors of an insolvent debtor, because that which the law expressly sanctions and permits cannot be a legal fraud. Jacoby v. Distilling Co., 41 Minn. 227, 43 N. W. 52; Kelly v. Sparks, 54 Fed. 70; Sproul v. Bank, 22 Kan. 238; Tucker v. Drake, 11 Allen, 145; O'Donnell v. Segar, 25 Mich. 367; North v. Shearn, 15 Tex. 174; Cip-

perly v. Rhodes, 53 Ill. 346; Randall v. Buffington, 10 Cal. 491. When the appellees sold their farm in Nebraska, and bought and took possession of their homestead in Kansas, the bank had acquired no lien and no specific equitable interest in any of the property of its debtor. It was his simple contract creditor, and it had no vested right in either his property or his residence. He had the right to change his residence from one state to another, and to secure for himself a homestead in any state where he chose to live. If, therefore, he had taken the conveyance of his homestead in Kansas in his own name, it would have been exempt from the judgment of the appellant.

The only question remaining is whether the farm lost this exemption because he caused it to be conveyed to his wife. Upon this question the authorities are not in accord. The supreme court of Minnesota declares that such a transaction is a fraud upon creditors, and subjects the property so acquired to the payment of their debts. Sumner v. Sawtelle, 8 Minn. 309 (Gil. 272); Rogers v. McCauley, 22 Minn. 384. The supreme court of Kansas, on the other hand, holds that a homestead purchased and paid for from the unexempt property of the husband is equally exempt from judicial sale, under the constitution of that state, whether the title is taken in the name of the husband or in that of the wife. Monroe v. May, 9 Kan. 466, 475, 476; Hixon v. George, 18 Kan. 253, 258. The decisions of the highest judicial tribunal of the state of Kansas, which we have cited, settle this question in the case at bar. The question involves the construction and effect of the constitution and statutes of that state, and the decisions of it by that court establish a rule of property there, which has prevailed without modification for a quarter of a century. As was said by Mr. Justice Field in Christy v. Pridgeon, 4 Wall. 196, at page 203, in speaking of a law of the Republic of Mexico which had subsequently become, in effect, a local law of the state of Texas:

"The interpretation, therefore, placed upon it by the highest court of that state must, according to the established principles of this court, be accepted as the true interpretation, so far as it applies to titles to lands in that state, whatever may be our opinion of its original soundness. Nor does it matter that in the courts of other states, carved out of territory since acquired from Mexico, a different interpretation may have been adopted. If such be the case, the courts of the United States will, in conformity with the same principles, follow the different ruling so far as it affects titles in those states."

The construction by the highest judicial tribunal of a state of its constitution or statutes, which establishes a rule of property, is controlling authority in the courts of the United States, where no question of right under the constitution and laws of the nation and no question of general or commercial law is involved. Brashear v. West, 7 Pet. 608, 615; Allen v. Massey, 17 Wall. 351; Lloyd v. Fulton, 91 U. S. 479, 485; Sumner v. Hicks, 2 Black, 532, 534; Jaffray v. McGehee, 107 U. S. 361, 365, 2 Sup. Ct. 367; Peters v. Bain, 133 U. S. 670, 686, 10 Sup. Ct. 354; Randolph's Ex'r v. Quidnick Co., 135 U. S. 457, 10 Sup. Ct. 655; White v. Cotzhausen, 129 U. S. 329, 9 Sup. Ct. 309; Chicago Union Bank v. Kansas City Bank, 136 U. S. 223, 235, 10 Sup. Ct. 1013; Detroit v. Osborne, 135 U. S. 492, 10 Sup. Ct. 1012; Madden v. Lancaster Co., 27 U. S. App. 528, 535–537, 12 C. C.

A. 566, 570, 65 Fed. 188, 192; Ottenberg v. Corner, 40 U. S. App. 320, 22 C. C. A. 163, 76 Fed. 263, 269. The decree below is in accordance with the constitution and statutes of the state of Kansas, as they have been construed by its supreme court, the property in controversy is situated in that state, and its title is fixed by that construction. Let the decree be affirmed, with costs.