## In re STONE.

(District Court, E. D. Arkansas, W. D. May 20, 1902.)

1. BANKRUPTCY—EXEMPTIONS—CONSTRUCTION OF STATE STATUTES.

In determining the rights of bankrupts to exemptions, courts of bankruptcy are bound by the construction placed on the statutes of the state by its highest court.

2. SAME—HOMESTEAD—ARKANSAS LAWS.

Under the decisions of the supreme court of Arkansas, which give a liberal construction to the homestead laws of the state, a bankrupt who, at the time of his bankruptcy, resided with his family in a portion of a building owned by him, and chiefly occupied for business purposes, is entitled to hold such building exempt as a homestead where it does not exceed the statutory limit of value.

3. SAME—FRAUD TO DEFEAT HOMESTEAD RIGHT.

The fact that a bankrupt removed, with his family, into a building owned by him, after he became insolvent, and in contemplation of bankruptcy, does not defeat his right to claim his homestead exemption in the property.

In Bankruptcy. On review of decision of referee.

The facts necessary for a determination of the issues involved, as found and certified by the referee, are as follows:

"The bankrupt claims as exempt, as his homestead, lots 6, 7, 8, 9, and 10, in block 14 in the town of Casa, Ark. The lots are in the business part of the town, and there is on them a wooden building 44 feet wide and 100 feet long, and in the southeast corner of this building a room 20 by 50 feet; all being under one roof, and divided by a frame partition. Entrance to this room was from the store, and also from the street. The entire building was erected by the bankrupt in 1901, and the large room was used by him exclusively as a storehouse, and the smaller room rented out by him, and was used at one time as a billiard hall, and, up to the time he moved in, as a restaurant. On December 14, six days before his failure, and in contemplation of bankruptcy, he moved his family, which up to that time had resided in a rented dwelling house in another part of the town, into the smaller room, making it the home of his family, which consists of himself, wife, and six children. Until he moved into this room, there was no effort to impress this property with the homestead character, though, when built, the bankrupt stated that he intended the buildings for a store and a home to live in. At the time the debts due from the bankrupt were contracted, no part of the premises was used as his homestead, and from the character and arrangements of the buildings, until he moved into it, the referee finds the buildings were primarily intended for business purposes, to the exclusion of a home for the family, and that the bankrupt had no other homestead."

J. G. Wallace, for the bankrupt.
John M. Moore and W. B. Smith, for the trustee.

TRIEBER, District Judge (after stating the facts). The right to exemptions under the bankrupt law depending solely on the statutes of the state, the national courts are bound by the construction of the statutes by the highest court of the state. Bank v. Glass, 25 C. C. A. 151, 79 Fed. 706; Steele v. Buel, 44 C. C. A. 287, 104 Fed. 968; Richardson v. Woodward, 44 C. C. A. 235, 104 Fed. 873.

While there is an irreconcilable conflict among the decisions of the highest courts of the various states as to the proper construction

¶ 2. See Homestead, vol. 25, Cent. Dig. § 54.

of the homestead laws, a careful analysis of the authorities shows that this difference of views depends solely upon the fact whether the court has adopted a liberal or strict construction of the exemption laws. In Arkansas, it is the settled rule that the homestead exemption laws shall be liberally construed. As early as 1867, the supreme court of the state, in Wassell v. Tunnah, 25 Ark. 101, adopted that rule, and it has been followed ever since. In that case, Mr. Justice Compton, delivering the unanimous opinion of the court, said:

"It was an enlightened public policy, looking to the general welfare as well as to that of the individual citizen, which dictated the passage of the homestead act; and the obvious intent of the act is to secure to every householder, or head of a family, a home, a place of residence, which he may improve and make comfortable, and where the family may be sheltered, and live beyond the reach of those financial misfortunes which even the most prudent and sagacious cannot always avoid; and the better to effectuate this intent, and thereby promote the prosperity of the state, as well as the independence of the citizen, no limitation as to value is fixed upon the homestead. The splendid mansion and the humblest cabin stand upon the same legal footing—each is the home of the citizen, as he has it; and as such the law protects it. The act, then, being remedial, and such being its spirit and intent, the narrow and literal construction contended for by the counsel for the appellant cannot be adopted consistently with the established rules of law applicable in such cases." 25 Ark. 103. Gainus v. Cannon, 42 Ark. 503-515.

Applying this rule to the facts of the case at bar, there is no difficulty to reach a correct conclusion. The bankrupt, at the time the petition was filed, and ever since, has occupied a part of the premises claimed as exempt as his home, living there with his family, and having no other home. How short a time he occupied the premises as such a home is immaterial, as long as he actually occupied the premises as his home at the time the rights of the creditors or trustee in bankruptcy accrued. The fact that the premises are used principally as a storehouse does not deprive the debtor's family of the right of homestead. Klenk v. Knoble, 37 Ark. 298; Gainus v. Cannon, 42 Ark. 503; Berry v. Meir, 66 S. W. 439, 70 Ark. ——, decided by the supreme court of Arkansas in January, 1902. In Klenk v. Knoble, supra, the facts were that the debtor claimed as exempt several lots lying contiguous in one block. He was a stone mason, and also a brewer. On the premises, he had erected a small dwelling house occupying one lot, and the brewing house occupying some of the other lots. The family lived in the dwelling house, but the debtor slept frequently in the brewery, not for want of room in his house, but on account of his business, and because he did not live pleasantly with his wife. Upon these facts, the court held that the entire premises, including the brewery, constituted a homestead, and was exempt from seizure and sale under execution. In Berry v. Meir, supra, the facts were that the debtor purchased one-third of a town lot on which was a storehouse, in which he conducted a retail business. Subsequently he purchased the other two-thirds of the lot, erected a dwelling house thereon, and used it for residence purposes; the two parts of the lot being separated by a fence. Upon these facts, the court held that the entire lot was exempt as the homestead. In its opinion the court say:

"There are decisions by courts of other states to the effect that such a storehouse, entirely separate from the residence of the owner, and not used as an appurtenance or convenience of the dwelling house, is not a part of the homestead, but a majority of the judges are of the opinion that this court is committed to a different view of the law. In Gainus v. Cannon, 42 Ark. 504, Mr. Justice Eakin, speaking for the court, said: 'It is a strange and irrational idea, sometimes advanced, that a man ought to lose his homestead as soon as he attempts to make any part of it helpful in family expenses.'"

To the same effect, see Rush v. Gordon, 38 Kan. 535, 16 Pac. 700; In re Ogburn's Estate, 105 Cal. 95, 38 Pac. 498; Orr v. Shraft, 22 Mich. 260; Groneweg. v. Beck, 93 Iowa, 717, 62 N. W. 31; McDougall v. Meginniss, 21 Fla. 362; Lamont v. Le Fevre, 96 Mich. 175, 55 N. W. 687; Corey v. Schuster, 44 Neb. 269, 62 N. W. 470; Parisot v. Tucker, 65 Miss. 439, 4 South. 113; Palmer v. Hawes, 80 Wis. 474, 50 N. W. 341. Even if the homestead consists of two tracts, which only corner with each other, and on one of which the dwelling house is located, both tracts may, under the laws of Arkansas, be claimed as a homestead, if they do not exceed the legal area and value. Clements v. Bank, 64 Ark. 7, 40 S. W. 132, 62 Am. St. Rep. 149. It is, therefore, the established rule of the state that premises in part occupied for business purposes may still be claimed as exempt as a homestead under its laws.

Does the fact that the bankrupt made the premises his homestead when he knew that he was insolvent, and in contemplation of bankruptcy, constitute such a fraud as to deprive him and his family of the benefit of the exemption laws? In determining this question, it must be remembered that the object of the homestead exemption, under the laws of this state, as declared by the supreme court, is "to secure to every head of a family a home and place of residence, which he may improve and make comfortable, and where the family may be sheltered, and live beyond the reach of those financial misfortunes which even the most prudent and sagacious cannot always avoid." 25 Ark. 103. A fraudulent conveyance of the homestead does not cause the debtor to forfeit it. Bennett v. Hutson, 33 Ark. 762; Turner v. Vaughan, Id. 454; Carmack v. Lovett, 44 Ark. 180; Bogan v. Cleveland, 52 Ark. 101, 12 S. W. 159, 20 Am. St. Rep. 158; Blythe v. Jett, 52 Ark. 547, 13 S. W. 137; Pipkin v. Williams, 57 Ark. 242, 21 S. W. 433, 38 Am. St. Rep. 241. If a debtor, while insolvent, may take property not exempt, and invest it in a homestead, and hold that as exempt, is he not clearly entitled to appropriate property owned by him for his homestead, by moving his family into it, and using it, when insolvent, as a family dwelling? That the former may be done is settled by numerous decisions. Chase v. Swayne, 88 Tex. 218, 30 S. W. 1049, 53 Am. St. Rep. 742; Cipperly v. Rhodes, 53 Ill. 347; Jacoby v. Distilling Co., 41 Minn. 227, 43 N. W. 52; Sproul v. Bank, 22 Kan. 336; O'Donnell v. Segar, 25 Mich. 367; Kelly v. Sparks (C. C.) 54 Fed. 70. This rule has been recognized in this court by Judge Caldwell in Backer v. Meyer (C. C.) 43 Fed. 702, and by the circuit court of appeals for the Eighth circuit in Bank v. Glass, 25 C. C. A. 151, 79 Fed. 706. In the last case, Judge Sanborn, in delivering the opinion of the court, says:

"If he takes property not exempt from judicial sale, and applies it to this purpose, he merely avails himself of a plain provision of the constitution or the statute enacted for the benefit of himself and his family. He takes nothing from his creditors, by this action, in which they have any vested right. * * * Nor can the use of property that is not exempt from execution to procure a homestead be held to be a fraud upon the creditors of an insolvent debtor, because that which the law expressly sanctions and permits cannot be a legal fraud."

And Judge Caldwell, in Backer v. Meyer, supra, said:

"The homestead of the defendants was purchased by Meyer, after his insolvency, in the name of his wife, but this fact does not make it any the less the family homestead. If Meyer had purchased the homestead in his own name, it would, under the constitution and laws of the state of Arkansas, have been exempt, and the creditors were not, therefore, defrauded or prejudiced by the fact that it was purchased in the name of the wife."

In Re Wright, 3 Biss. 359, Fed. Cas. No. 18,067, and in Re Lammer, 7 Biss. 269, Fed. Cas. No. 8,031, different conclusions were reached by the court, but this court is concluded by the decisions of the highest court of this state and those of the United States circuit court of appeals for the Eighth circuit.

The conclusion is that the bankrupt is entitled to claim the premrses as exempt, they constituting his homestead under the provisions of the constitution and laws of the state of Arkansas.

Since the foregoing opinion was prepared, the identical question has been decided by the United States circuit court of appeals for this circuit [Eighth] in Huenergardt v. Dry Goods Co., 116 Fed. 31, and the same conclusion reached.