## In re THOMPSON.

(District Court, E. D. Washington. August 24, 1905.)

1. BANKRUPTCY—HOMESTEAD EXEMPTION—ABANDONMENT.

A debtor had lived with his family upon a farm owned by him for several years, when his house was burned and he moved into one owned by another, but continued to use his farm and keep his stock there. Subsequently he moved to a town for the purpose of sending his children to

school, but without intention. of .remaining, except temporarily, and during such time he and his wife returned, built an addition to a small house, and executed and filed a declaration of homestead on the farm under the Washington statute (Ballinger's Ann. Codes & St. § 5214 et seq.), which gives the right to a homestead only in the dwelling house in which the claimant resides and the land on which it is situated. This declaration was filed in contemplation of bankruptcy, and the debtor shortly afterwards filed a petition on which he was adjudicated a bankrupt. *Held* that, under the statute as construed by the Supreme Court of the state, there had. not been an abandonment of the homestead which deprived the bankrupt of the right to claim the exemption.

2. HOMESTEAD—RIGHT TO EXEMPTION—EFFECT OF FRAUDULENT CONVEYANCE.

Where a conveyance in fraud of creditors is set aside, the property is administered as that of the debtor, and as a matter of general law he is not precluded by the void conveyance from asserting his right to a homestead exemption therein as against his creditors.

[Ed. Note.—For cases in point, see vol. 26, Cent. Dig. Homestead, §§ 349, 350.]

3. BANKRUPTCY—LAND CONVEYED IN FRAUD OF CREDITORS.

Under Bankr. Act July 1, 1898, c. 541, §§ 67e, 70a (4), 30 Stat. 564, 566 [U. S. Comp. St. 1901, pp. 3449, 3451], by which the title to property conveyed by a bankrupt in fraud of creditors vests in his trustee, "except in so far as it is to property which is exempt," such a conveyance of land does not deprive a bankrupt of the right to claim a homestead exemption therein, where the land has been reconveyed to or recovered by the trustee.

In Bankruptcy. On review of findings and decision of referee.

Thomas Neill, for bankrupt.
McCroskey & Canfield, for objecting creditors.

WHITSON, District Judge. For many years prior. to January, 1904, the bankrupt with his family resided in a house on the premises now claimed as his homestead. This house was burned in the early part of 1904. Shortly after he moved with his family into a house on the adjoining land, belonging to one Harter, and there they remained until October 30th. On October 27th the bankrupt and his wife made a deed of all their real estate, and a bill of sale of all their personal property, except household goods, to Mary I. Oliver. The badges of fraud attending this transaction are numerous. Thompson admits in his testimony that he made the conveyance for the purpose of hindering and delaying his creditors, and the brief of his counsel, while not admitting, at least anticipates, such a finding. Mrs. Oliver did not know, when interrogated, the price she paid, or the amount of the debt which she claimed against Thompson. There was no exercise of ownership or control over the property after the alleged transfer. Thompson continued in possession as before, and, while it is true that the recording of the instruments would pass the title regardless of possession, yet failure of a vendee to take possession may be considered as going to the good faith of the transaction.

The consideration does not appear to have been agreed upon, until the parties discussed it, on the suggestion of the notary that $4,500, casually mentioned on the spur of the moment, was not sufficient for so valuable a tract of land; and thereupon it was fixed at $9,000. Thompson and the vendee are brother and sister. While

the fraudulent intent of Thompson and wife is not chargeable to their vendee, if the property was taken as security in good faith, yet it is apparent that Mrs. Oliver aided them in their attempt to put this property beyond the reach of their creditors. The remark of Mrs. Thompson, said to have been made prior to the signing of the instruments, that she would sign if it did not have the effect of defrauding creditors, shows too much solicitude and method, considering the shady nature of the transaction, to entitle it to any weight. It is rather a badge of fraud than an evidence of fair dealing. The obligation under which it is claimed that Mrs. Oliver took the property is of doubtful character, executed 10 years before. Then, if the property was taken as security, there should have been, under the circumstances, a disclosure of that fact, instead of the attempt to make it appear that it was an absolute sale; and the value of the property taken was out of all proportion to the amount of the indebtedness claimed by Mrs. Oliver. It is a very suspicious circumstance, too, that Thompson was the moving party, and that such a stale debt should have been secured after so many years, at the instigation of the debtor, without any claim for security on the part of the creditor. The vendors and vendee claimed that the transaction was an absolute sale for cash, less the amount of this debt. Thompson now admits that this was false, and Mrs. Oliver as effectually admits it by the surrender of the property into the hands of the trustee and filing her claim for allowance against the estate of the bankrupt, without any claim for repayment of money advanced. The finding, therefore, upon this branch of the case, must be that Thompson and wife attempted to convey this property to Mrs. Oliver, not as security, but for the purpose of hindering, delaying, and defrauding their creditors, and that Mrs. Oliver accepted the same with full knowledge of such fraudulent intent. The objecting creditors here were such at the time of the making of the deed and bill of sale, and as to them the conveyance was void, which gives them standing to claim the property transferred in fraud of their rights.

On or about October 30th the bankrupt with his family moved to Lewiston in the state of Idaho, taking with them a large portion of their household goods, but leaving a part of them on and near the land now claimed as a homestead. Up to the time of the burning of the house on this land, there was nothing to indicate anything other than a bona fide residence by the bankrupt and his family and the claiming of the same as a home. After the house was burned, it seems that the bankrupt continued to keep his stock on the place, and to maintain his improvements and receive his mail at the same box where he had theretofore received it. Clearly Thompson's residence in the Harter house was only a makeshift. He intended to return to the land as soon as he was able to build a house, and, instead of using the money received on account of the insurance for that purpose, it is undisputed that he used it in payment of certain debts. The real controversy begins with the removal to Lewiston. The evidence fairly preponderates that such removal was not in-

tended to be permanent. It was for the purpose of temporary residence, in order to educate the daughter, who was unable by reason of physical ailments to attend distant schools in the locality. Intention governs on the question of residence. In re Williams (D. C.) 99 Fed. 544, and cases there cited. I find from the testimony that the bankrupt did not intend to leave the state of Washington and establish his residence in Lewiston, but only intended to stay there during the winter. The testimony also establishes that he and his wife were occupying the land and the house thereon at the time of filing the homestead declaration on November 28, 1904. They kept a hired man there. Their stock was taken care of on the place. Their occupancy was as good as they could make it, considering that they were maintaining a house in Lewiston for the purpose of sending their children to school. In this connection the finding must be that Thompson and wife came back to the land at that particular time for the express purpose of filing their homestead declaration and claiming the land as a homestead, that they built the addition to the small house already there for that purpose, that they had the bankruptcy proceeding in view, that it was for the purpose of claiming this property as exempt that they improved and added to the house at that time, and that they occupied it in full contemplation of the petition in bankruptcy, which they at the time expected to file. If there can be fraud in connection with the claiming of a homestead, considering the conveyance in connection with these facts, it is here presented.

The following sections of Ballinger's Annotated Codes & Statutes relate to homestead exemptions in this state:

"Sec. 5214. A homestead consists of the dwelling house in which the claimant resides, and the land on which the homestead is situated, selected as in this chapter provided."

"Sec. 5237. Homesteads may be selected and claimed in lands and tenements, with the improvements thereon not exceeding in value the sum of two thousand dollars. The premises thus included in the homestead must be actually intended and used for a home for the claimants, and shall not be devoted exclusively to any other purpose."

"Sec. 5243. In order to secure a homestead, the husband, or other head of a family, or in case the husband has not made such selection, the wife must execute and acknowledge in the same manner as a grant of real property is acknowledged, a declaration of homestead, and file the same for record."

"Sec. 5245. The declaration must be recorded in the office of the auditor of the county in which the land is situated.

"Sec. 5246. From and after the time the declaration is filed for record, the premises therein described constitute a homestead. * * *"

It is objected that the character of the house on the premises was not such as to indicate good faith; but it was probably the best that the bankrupt could provide under the stress of his financial difficulties. The law does not specify any particular kind of a dwelling house; but the premises must be actually intended and used for a home. As against a continuous residence of 16 years by the bankrupt with his family upon this land, interrupted only by the burning of the dwelling house and absence therefrom in the education of his children, the proof ought to be convincing when an abandonment is claimed. It is not convincing. On the contrary,

it preponderates the other way. The bankrupt complied literally with the several provisions of the statute, which, according to all the authorities, must be liberally construed. In this state the homestead claim may be made at any time before sale. Ross v. Howard, 25 Wash. 5, 64 Pac. 794; Wiss v. Stewart, 16 Wash. 376, 47 Pac. 736; Anderson v. Stadlmann, 17 Wash. 433, 49 Pac. 1070.

This brings us to the consideration of the question as to whether the fraudulent transfer deprived the bankrupt of his right to claim exemptions and his family of the benefit of them. Attention has been called to the case of Shoemake v. Finlayson, 22 Wash. 12, 60 Pac. 50, which holds that a conveyance made in fraud of creditors, while it is void as to them, is good as between the parties; and this is familiar law. But it does not necessarily follow that, if the conveyance is set aside and the property is treated as a fund in the hands of a trustee for the payment of the bankrupt's debts, he has no interest in it. Counsel seek, if I apprehend their position correctly, to sustain the view that the transfer by Mrs. Oliver to the trustee passed the title to him whereby any interest of the bankrupt is cut off, and that inasmuch as he could not disturb her in her possession, or demand an accounting for the proceeds of the property, that he is also precluded from demanding that his exemptions be set aside by the trustee. The attempted transfer being void as to creditors, the property still remains that of the bankrupt for the purpose of paying his debts; otherwise, we would have the anomaly of the debts of a bankrupt being paid out of the property of a third person. The property, being subject to the debts of the bankrupt, could not be so upon any other theory than that of ownership by him. While it is true some courts have held that, where the bankrupt commits fraud in the conveyance of his property, which is recovered at the suit of creditors, he is precluded from making claim to exemptions, yet the weight of authority is the other way. Those authorities which hold that an act of fraud is sufficient to deprive one of exemptions, in my opinion, confound fraudulent transfers generally with statutory rights. There can be no such thing as fraud in claiming that which the law allows. The question under consideration does not appear to have been decided by the Supreme Court of the state. At least no decision has been called to my attention by counsel. The court is therefore at liberty to put its own construction upon the statute.

In Wiss v. Stewart, 16 Wash. 376, 47 Pac. 736, it was held that an absolute conveyance by deed, which was in fact a mortgage, would not deprive one of the right to claim homestead exemption; and this was affirmed in Ross v. Howard, 25 Wash. 1, 64 Pac. 794. There is no intimation in either of those cases throwing any light upon the question as to whether a deed made in fraud of creditors deprives the debtor of exemptions. The rule is laid down in 11 Am. & Eng. Encyclopedia of Law (New Ed.) p. 394, as follows:

"Where a debtor has conveyed to third persons land, including his homestead interest, to hinder, delay, and defraud his creditors, and such conveyance has been set aside and avoided at the suit of creditors, such debtor will not be estopped to assert as against such creditors the same rights for the

protection of his homestead as if the alleged fraudulent deed had never been. executed."

An insolvent debtor may purchase a homestead with moneys realized by the sale and disposal of nonexempt assets, and fraud cannot be imputed to such act. Kelley v. Sparks et ux. (C. C.) 54 Fed. 70. The use of property not exempt from execution by a debtor to procure the title to a homestead in his own name is not a fraud upon his creditors. That which the law expressly sanctions and permits cannot be a legal fraud. First National Bank of Humboldt, Neb., v. Glass et al., 79 Fed. 706, 25 C. C. A. 151. Sears v. Hanks (Ohio) 84 Am. Dec. 378, is in point. After a fraudulent deed had been set aside, the grantor claimed exemptions, creditors denying the right; but the court held that the property remained that of the debtor, and that he still had the right to exemptions, using this language:

"The validity of the fraudulent conveyance as between the parties to it is no concern of the creditors, when it has been set aside as to them."

So, in Re Stone (D. C.) 116 Fed. 35, the bankrupt removed with his family into a building owned by him after he became insolvent, and in contemplation of bankruptcy; but the right to the homestead exemption was sustained nevertheless.

There is another reason equally convincing. Congress in the bankruptcy act appears to have anticipated the contention made in this case. Section 67e (Act July 1, 1898, c. 541, 30 Stat. 564, 565 [U.S. Comp. St. 1901, p. 3449]) declares that all conveyances, transfers, etc., made or given by a person adjudged a bankrupt under the provisions of the act, with the intent and purpose on his part to hinder, delay, and defraud his creditors, shall be null and void as against such creditors, "and all property of the debtor conveyed, assigned or encumbered as aforesaid, shall, if he be adjudged a bankrupt and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt, and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors."

The legislative intent is further manifest in section 70a, quotation from which follows:

"The trustee of the estate of a bankrupt * * * shall * * * be vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt * * * to all (4) property transferred by him in fraud of his creditors." 30 Stat. 565, 566 [U. S. Comp. St. 1901, p. 3451].

That the title to property transferred by the bankrupt in fraud of his creditors vests in the trustee, except in so far as such property may be exempt, seems to be the proper construction of the language used.

It follows that the findings and decree of the special referee must be overruled, and an order entered setting aside to the bankrupt the homestead exemption of $2,000, and the personal property exemptions allowed a farmer by the statute; and an exception will be allowed the objecting creditors.