### LITTLETON v. CARRUTHERS-JONES SHOE COMPANY.

### Opinion delivered October 20, 1913.

1. HOMESTEAD—CREDITORS—LIEN.—When A purchased goods from B on credit, and selling them, purchased real estate with the proceeds, and moved upon the same, *held*, regardless of A's purchase of the goods in bad faith, or an intention to defeat B, in the collection of his debt, A was entitled to claim his homestead exemptions in the land purchased. *Semble*, the rule might be different if A purchased the goods from B with the fraudulent intent not to pay for them. (Page 495.)

2. SALE OF CHATTELS—LEGAL FRAUD.—When A purchased goods from B, and then sold out his business to F, and after the sale to F, B sent goods under the original order directed to A. *Held*, F, by converting the goods to his own use, without notifying B of the change in business, became liable to B for the amount of their value. (Page 497.)

Appeal from Logan Chancery Court; *J. V. Bourland*, Chancellor; reversed in part, affirmed in part.

*Priddy & Chambers,* for appellant.

1. Appellee had a complete and adequate remedy at law, hence appellant's demurrer should have been sustained.

2. Littleton had the legal right to convert his unencumbered assets into a homestead, and to hold it as exempt from the claims of creditors.    99 Ark. 45.

*W. B. Rutherford,* for appellee.

1. The objection to the forum should have been by motion, and not by demurrer, and no motion having been made, the objection was waived.    37 Ark. 185; 32 Ark. 562; 31 Ark. 411.

2. When Littleton fraudulently and without the knowledge or consent of appellee converted the latter's goods into the land, an equitable lien on the land attached *eo instanti* in favor of appellee.    19 Am. & Eng. Enc. of L. (2 ed.) 19-23.    See also 62 Ark. 400.

The facts are so entirely dissimilar in the Ferguson case, 99 Ark. 45, relied on by appellant, that that case is not applicable as an authority in this case.

McCULLOCH, C. J.    Appellant, J. M. Littleton, was engaged in the mercantile business at Blue Mountain, Arkansas, and became indebted to appellee, Carruthers-Jones Shoe Company, of St. Louis, Missouri, in the sum of $394.50 for a bill of shoes purchased from the latter. While thus indebted to appellee, he exchanged his stock of goods with T. F. Finch, for a farm in Yell County, Arkansas, which he soon after moved upon and made his homestead.

Of the goods so purchased from appellee and shipped to Littleton at Blue Mountain the first consignment was on May 19, 1911, of goods amounting to $327.15, and the remainder of the bill was shipped on June 23, 1911. Both consignments were made pursuant to an order sent in by appellee's traveling salesman prior to the date of the first shipment. The exchange by Littleton of his goods with Finch for the farm occurred some time in June, the precise date not being given, but it is evident that it took place before the last bill of goods was shipped

and that it was received by Finch and placed among the other goods after he had taken possession of the stock.

Appellee instituted this action in the chancery court against Littleton and Finch, and also making prior lienors of the farm property parties, alleging that the sale by Littleton to Finch was made with the fraudulent intent to cheat, hinder and delay the appellee in the collection of its debt, and seeking to have a lien declared on the farm which Littleton had received in the exchange and which he occupies as his homestead.

The decree of the chancery court, on final hearing of the case, declared a lien in favor of appellee against Littleton on the farm for the amount of the first consignment of the goods, $327.15, and interest, and the court also decreed that appellee recover from Finch the amount of the second bill of goods, $76.95, with interest.

Littleton and Finch both appealed to this court.

It is unnecessary to determine whether or not Littleton acted in good faith in exchanging the stock of goods for the farm and then taking possession of the latter as a homestead. Conceding that his purpose was to defeat his creditors in the collection of their debts, appellee is not entitled to have a lien declared on the place, for, regardless of the good or bad faith in the transaction, Littleton is entitled to claim his homestead exemptions. *Ferguson* v. *Little Rock Trust Co.,* 99 Ark. 45.

In the case just cited we quoted with approval the following language taken from the decision of the United States Circuit Court of Appeals for the Eighth Circuit in the case of *First National Bank* v. *Glass,* 79 Fed. 706, as follows:

"An insolvent debtor may use with impunity any of his property that is free from liens and vested equitable interests of his creditors to purchase a homestead for himself and family in his own name. If he takes property that is not exempt from judicial sale and applies it to this purpose, he merely avails himself of a plain provision of the Constitution or statute enacted for the

benefit of himself and family. He takes nothing from his creditors by this action in which they have any vested right."

We also quoted with approval language of the Supreme Court of Minnesota in the case of *Jacoby* v. *Parkland Distilling Co.*, 41 Minn. 227, 43 N. W. 52, as follows:

"Even if he disposes of his property subject to execution for the very purpose of converting the proceeds into exempt property, this will not constitute legal fraud. This he may do at any time before the creditors acquire a lien upon the property. It is a right which the law gives him, subject to which every one gives him credit, and fraud can never be predicated on an act which the law permits."

Now, the rule might be different if the proof was sufficient to show that the goods were purchased from appellee with the fraudulent intent not to pay for them, for in that case the title would never have passed on account of the fraud thus practiced, and the creditor might in equity be permitted to trace the proceeds of his misappropriated property into the property in which the proceeds were invested. But we have no such case here, for there is no proof at all to the effect that Littleton purchased the goods with intention not to pay for them, or that he was insolvent at the time he purchased the goods, or that he misrepresented his financial condition. In other words, no state of facts existed which prevented the title from passing from appellee to Littleton, and the only fraud, if any there be, consisted in his disposing of the goods without leaving enough to pay his creditors. As already shown, according to the principles settled by the decisions of this court, fraud in that respect does not affect his right to hold as exempt the property acquired by exchange. It follows, therefore, that the chancellor erred in declaring a lien on the lands in controversy.

We are of the opinion that the court was correct in rendering a personal decree against Finch for the amount of the last invoice of goods. The proof is not sufficient to show that Finch participated in the fraudulent design of Littleton, if it be conceded that the latter acted with

fraudulent design toward his creditors, nor is it necessary, in order to sustain the finding of the chancellor, to show that he did participate in such fraud. The proof shows clearly that the last bill of goods shipped from St. Louis, after the stock of goods was exchanged, was delivered to Finch, and it was received at Blue Mountain after the exchange of property took place. Littleton and Finch both testified that this bill of goods, even though it was received after the exchange was completed, was included in the invoice; but we are not altogether satisfied that that is true, for it does not appear that Littleton had any invoice of this bill of goods at all when he exchanged the stock of goods with Finch. But, be that as it may, we think that the circumstances under which Finch received the bill of goods made him liable to appellee for the amount. The goods were shipped by appellee to Littleton in compliance with the order formerly transmitted through the traveling salesman, and evidently without any knowledge of the fact that Littleton had quit business and sold out to Finch. If appellee had known at that time that Littleton had sold out and was no longer in the mercantile business, it seems probable that, according to ordinary commercial customs, they would not have shipped the goods. Good faith on the part of Finch required that, before taking the goods into his possession, he should notify appellee of the change in the business. By failing to do this, and taking the goods and converting them to his own use, he made himself liable for the amount. His acceptance of the goods without notifying appellee was, to that extent, a legal fraud, which makes him liable for the value thereof.

The personal decree against Littleton for the amount of the first bill of goods is affirmed; likewise the decree against Finch for the amount of the last bill, with interest thereon, is affirmed, but that part of the decree which declares a lien against Littleton's land is reversed and the cause is remanded with directions to dismiss the complaint so far as it concerns that feature of the case.