CHOPIN, imp., Appellant, vs. RUNTE and wife, Respondents.

*December 4, 1889 — January 7, 1890.*

*Homestead: Land held under contract: Moneys advanced for improvements, etc.: Rights of wife: Estoppel.*

1. Land held under a contract for its purchase may be exempt as a homestead.
2. The vendor in a land contract advanced money to the vendee to be used, and which was used, in the construction of a dwelling-house on the land, under an oral agreement that such advances should be repaid before the vendee should be entitled to a deed. The premises were occupied by the vendee as his homestead. Afterwards the legal title was transferred to the defendant, who paid the amount due to the vendor, and other debts of the vendee, and gave to the latter a new contract to convey the land to him on payment of such advances and the amount of a previous indebtedness of the vendee to the defendant. The defendant also expended certain sums upon the premises for necessary repairs and improvements, for taxes, and for insurance. In an action to enforce specific performance of the original contract, it is *held* that the vendee's wife (to whom the contract had been assigned) was entitled to a conveyance upon payment of the amount due on said contract and the taxes paid by the defendant. As to all other advances made by the original vendor and the defendant the homestead right of the wife is paramount, and the defendant cannot hold the property as security therefor. The fact that the wife receives the benefit of the improvements does not estop her to assert her homestead right as against such advances.

APPEAL from the Circuit Court for *Outagamie* County.

Action to compel specific performance of a contract, made September 1, 1880, by which one, N. M. Edwards agreed to convey to the plaintiff John Chopin a certain lot in the city of Kaukauna on payment by Chopin of $200, $50 of which was paid down. The complaint alleges the assignment of said contract by John Chopin to the plaintiff *Catherine Chopin*, his wife, and that Edwards had deeded the land to the defendant *Otto Runte*, who bought knowing that the land was the plaintiff's homestead.

The court found, as facts, (1) that the contract was executed as alleged; (2) that except the $50 then paid no part of the purchase price had been paid; (3) that soon after the execution of the contract John Chopin erected a dwelling-house on the lot, and the plaintiffs have ever since occupied the premises as their homestead, except while the same were rented to one Dobkins as hereinafter stated; and that during that time the plaintiffs intended to, and at the end thereof did, return to said premises as their home; (4) that while said dwelling-house was being erected the said Edwards advanced to John Chopin, at the request of the latter, between September 1, 1880, and October 13, 1881, various sums of money to be used, and which were in fact used, in paying for labor and materials in the construction of said dwelling-house, and which were necessary therefor, which advances, together with the unpaid purchase money under said contract, on October 13, 1881, amounted to $355.25; (5) that said advances were made under an oral agreement between Chopin and Edwards that they should be repaid, as well as the balance of the purchase money, before Chopin should be entitled to a deed; (6) that on October 13, 1881, Chopin was indebted in the sum of $196.65 to various persons for work, labor, and materials in the construction of said dwelling-house, for which indebtedness mechanics' liens existed on said prem-

ises, the enforcement of which was threatened and impending; (7) that at said time Chopin was also indebted to the defendant *Otto Runte* in the sum of about $335 for merchandise for said Chopin's family, and to other persons for provisions and supplies in the sum of $49.88.

The court further found (8) that on or about said October 13, 1881, the plaintiffs jointly applied to the defendant *Otto Runte* for means to pay Edwards and the other debts owed by Chopin, the said Edwards having refused to make any further advances; that it was finally agreed between the plaintiffs and *Runte* that the latter should pay Edwards said sum of $355.25, and said lien claims of $196.65, and said sum of $49.88, and take a deed of the premises and hold the same until all said sums should be repaid to him, and until he should also be paid said sum of $335 due for merchandise as aforesaid; (9) that thereupon *Runte*, at the joint request of the plaintiffs, paid said sums of $355.25, $196.65, and $49.88, and on the like request and with the procurement of the plaintiffs took a warranty deed of the premises from Edwards, (10) and afterwards, on October 20, 21, 1881, at the requests of both of the plaintiffs, gave to John Chopin a contract to convey the premises to him on payment of $908.53 within three years, also a lease of the property for three years at $240 per year; (11) that in 1882 *Runte*, at the request and with the consent of the plaintiffs, leased said premises to one Dobkins, who occupied them for about six months and paid *Runte* $90 rent therefor; that said rent was applied by *Runte*, with the consent of said Chopin, on his account for goods purchased for his family from *Runte* after October 13, 1881; (12) that subsequent to October 13, 1881, Runte expended on said premises for necessary improvements and repairs $41.85, for taxes $21.27, and for insurance $24; (13) that the following items of advances and indebtedness, as aforesaid, remain wholly unpaid: Amount paid Edwards, $355.25;

amount paid for liens, $196.65; amount paid other persons, $49.88; taxes and improvements, $63.12; insurance, $24; amount due *Runte* for goods, $335; (14) that the land contract from Edwards to John Chopin had been transferred to the plaintiff *Catherine Chopin* as alleged.

As conclusions of law the court found that the deed from Edwards to *Runte* was intended as security and is a mortgage of the premises, paramount to any homestead right or interest of the plaintiffs, for the following advances and indebtedness, with interest: $355.25 paid Edwards; $196.65 paid for liens; $21.27 paid for taxes; $41.85 paid for improvements; $261.83 interest; that the claims of *Runte* of $335 for merchandise, $49.88 paid to various persons, and $24 paid for insurance, are subordinate to the homestead rights of the plaintiffs, which as to said last-mentioned claims are unaffected by the deed from Edwards to *Runte;* that the total amount of the mortgage debt, principal and interest, for which said deed is a mortgage, and which is now due, is $876.85; and that the defendants are entitled to judgment of foreclosure.

From the judgment entered accordingly the plaintiff *Catherine Chopin* appeals.

For the appellant there was a brief by *Pierce & Moeskes,* and oral argument by *Humphrey Pierce.*

*Geo. G. Greene,* for the respondents, contended, *inter alia,* that *Runte* was entitled to hold the legal title as security for the amount as to which his claim was rejected, as well as for that as to which it was sustained. The deed from Edwards to *Runte,* and his lease and land contract to Chopin, constituted a mortgage. Jones on Mortg. sec. 331; *Hoile v. Bailey,* 58 Wis. 434; *Green v. Pierce,* 60 id. 372; *Starks v. Redfield,* 52 id. 349. The signature of *Mrs. Chopin* was not necessary, even if the premises were a homestead, because, according to her own undisputed testimony, she was the owner of the homestead interest. *Godfrey v.*

*Thornton*, 46 Wis. 683–4. She could have compelled her husband, at any time, to make the assignment to her. 1 Perry on Trusts, secs. 126, 127; *Roller v. Spilmore*, 13 Wis. 26; *Pratt v. Ayer*, 3 Pin. 236; *Kluender v. Fenske*, 53 Wis. 118. At the time of the deed to *Runte* the plaintiffs had not acquired any interest in the house and lot sufficient to constitute a homestead. There can be no exempt homestead in the vendee of a land contract until the purchase money has been substantially paid. *Thurston v. Maddocks*, 6 Allen, 427; *Fairbairn v. Middlemiss*, 47 Mich. 372; *Farmer v. Simpson*, 6 Tex. 303; *Buford v. Rosenfield*, 37 id. 46; 9 Am. & Eng. Ency. of Law, 439, note 1; Phillips on Mech. Liens, sec. 183*a*. The wife has no *estate* in the husband's homestead, but a mere veto power against his disposal of it. *Godfrey v. Thornton*, 46 Wis. 677; *Petesch v. Hambach*, 48 id. 451; *Smith v. Scherck*, 60 Miss. 491. Hence, she cannot control his payment of the purchase money, and he may surrender the unpaid contract at pleasure. *Thurston v. Maddocks*, 6 Allen, 427; *Farmer v. Simpson*, 6 Tex. 303; *Buford v. Rosenfield*, 37 id. 46. The vendee under a land contract is the owner of the land in equity only in proportion to his payments. *Jennisons v. Leonard*, 21 Wall. 302; *McCabe v. Mazzuchelli*, 13 Wis. 478. Whatever homestead right the plaintiffs had was abandoned when the arrangement with *Runte* was consummated. The husband may abandon the homestead. *Godfrey v. Thornton*, 46 Wis. 683; Thompson on Homest. sec. 276. While a subsequent abandonment will not save a mortgage of the homestead without the wife's signature, one that is concurrent with it and a part of the same transaction will; for, in such case, the premises are not the husband's homestead at the consummation of the transaction. *Brown v. Coon*, 36 Ill. 243; *Winslow v. Noble*, 101 id. 194; *Drake v. Painter*, 77 Iowa, 731. The plaintiffs are estopped, or have waived the right, to claim the mortgage void for want of the wife's signature.

A married woman is estopped to deny the validity of a mortgage or deed of the homestead or her interest or estate in it, for noncompliance with statutory requirements, when she has participated in and received and retains the benefits of the transaction. *Norton v. Nichols,* 35 Mich. 148; *Godfrey v. Thornton,* 46 Wis. 690; *Fryer v. Rishell,* 84 Pa. St. 521; *Brumbaugh v. Zollinger,* 59 Iowa, 384; *Winslow v. Noble,* 101 Ill. 194; *Connolly v. Branstler,* 3 Bush, 702; *Adam v. Munzel,* 8 Atl. Rep. (Pa.), 606.

If *Runte* cannot hold the legal title for the full amount which it was intended to secure, he can for the amount paid to buy the lot and build the house. As against "laborers', mechanics', and purchase-money liens" the premises were not a homestead, and a mortgage to secure them is valid without the wife's signature. R. S. sec. 2983; *Fournier v. Chisholm,* 45 Mich. 417, 418; *Tift v. Newsom,* 44 Ga. 600; *Nichols v. Overacker,* 16 Kans. 59; *Peterson v. Hornblower,* 33 Cal. 275; *Carr v. Caldwell,* 10 id. 385; *Silsbe v. Lucas,* 36 Ill. 462; Thompson on Homest. secs. 342–4, 372; *Allen v. Hawley,* 66 Ill. 164; *Miller v. Brown,* 11 Lea (Tenn.), 155; *Farmer v. Simpson,* 6 Tex. 303; *Phelps v. Porter,* 40 Ga. 485; *Carey v. Boyle,* 53 Wis. 574.

COLE, C. J. We are quite clear that the homestead right attached to the premises which the plaintiff John Chopin purchased of Edwards. He took possession of these premises, built a house upon them, which he occupied with his family for years, and, if he did consent to their being leased for a period, this was for a temporary purpose and the exemption was not impaired by that act. It is said by the learned counsel for the respondents that Chopin did not acquire such an interest in the premises under the contract as would constitute them a homestead. This position we deem clearly untenable. The exemption extends to any estate less than a fee held by a person, by the express lan-

guage of the statute.  Sec. 2983, R. S.   The disability of
John Chopin to alienate or in any way incumber the premises
without the consent of his wife is clear and undoubted; for
the disability attaches to a homestead which is exempt by
law.   Sec. 2203.   The law in this regard has been changed
since *Platto v. Cady*, 12 Wis. 461, was decided.

It is further insisted by the same counsel that the evi-
dence shows that the wife was the real owner of the prem-
ises, and that, being her separate estate, she had the abso-
lute right to dispose of them or incumber them as though
unmarried.   There is certainly testimony to sustain that
view; but still we think the established facts show that the
husband purchased the premises from Edwards for himself;
that he had the equitable interest under the contract, and
was the real vendee.  It is probable that the wife furnished
the money to make the first payment on the contract.  She
so testified.   But the contract was not in her name, nor do
we think she was the real purchaser.   The husband must
be deemed the owner of whatever interest was acquired
under the Edwards contract, and the case will be considered
in that view.

Now, upon that assumption, what must be paid the re-
spondent to entitle the appellant to a conveyance from
him of the premises?   The circuit court held that, under
the arrangement which the evidence showed the parties
had made, the respondent held the premises as mortgagee
for the amount of $876.85, which the plaintiff must pay in
order to be entitled to a conveyance.   This sum is made
up of the amount due on the contract, and what John
Chopin owed Edwards when the latter conveyed the prem-
ises to the respondent, and what the respondent paid mate-
rial-men and for some improvements on the house and barn,
together with some taxes, and interest on these various
items of indebtedness.   So far as the homestead right is
concerned, the respondent stands in substantially the place

of Edwards. I cannot see any fact or circumstance in the case which gives him a greater right or more superior equity than Edwards would have had, had he retained the property and paid the same debts to the others which the respondent paid. All that Edwards could have exacted in that case would have been the purchase money due on the contract, and interest, and the taxes he has paid. It is said the evidence shows that Edwards, at the request of John Chopin, advanced the latter various sums, which were used in paying for labor and materials in the construction of the house on the premises, and which were necessary therefor, and which advances it was agreed should be paid, with the balance due on the contract, before he should be entitled to a deed. We assume, for the purposes of this case, that there was such a parol agreement made by the husband with Edwards that all the advances should be paid before the latter should convey the premises; but that could not affect the homestead right of the wife. The statute provides that no mortgage of the homestead shall be valid, or of any effect as such, without the signature of the wife to the same. The agreement made by the husband that the advances should give Edwards the right to withhold the deed until they were paid, was an attempt to subject the premises to a lien in his favor. To give validity to such an agreement would in effect annul the statute, which declares that no lien upon the homestead shall be created without the signature of the wife to the instrument creating it. To hold otherwise would enable the husband, by his parol agreement, to defeat the homestead right of the wife entirely. If the husband had given a mortgage of the land to secure the advances, the instrument would have had no validity as against the homestead right. *A fortiori*, a parol agreement would create no lien.

The reason for this conclusion is founded on the statute itself, which secures to the wife and children the home-

stead, unless the wife consents, and joins in the instrument creating the lien. The policy of this statute to restrain the alienation of the homestead, without the wife's joining in the conveyance, has been commented upon and upheld repeatedly in the cases which have come before the court. The whole policy and spirit of the law are to secure the homestead to the debtor and his family, in obedience to the express declaration of the bill of rights in the constitution; and it is a cardinal rule, which the court invariably acts upon, that exemption laws are to be liberally construed. *Zimmer v. Pauley*, 51 Wis. 282. From time to time since the organization of the government the legislature has extended and fortified the homestead rights of the wife and debtor; and we should be remiss in our duty if we failed to give full effect to this legislation. We must therefore hold that the parol agreement to make the advances a lien upon the premises, without the concurrence of the wife, can have no validity.

It is said that, as to the materials and labor furnished and rendered for the construction of buildings upon the premises, there is a paramount equity that they should not be subject to the homestead exemption but should be a lien upon the property. But that point was directly ruled the other way in *Spear v. Evans*, 51 Wis. 42. There, by an agreement between A. and B., A. advanced moneys to enable B. to purchase and improve land, and took the legal title from the government as security for such advances. B. always claimed to hold the land under this contract, and made a payment as late as 1875, and acknowledged and promised to pay the indebtedness in 1878. He afterwards married. In the opinion it is said: "It seems that Evans intermarried with Caroline, one of the respondents, in May, 1853, before the final payment on the land in December of that year, and a very large part of the money which went into improvements was evidently furnished after that time.

Whatever dower interest Caroline Evans acquired in the lands, and whatever homestead right there might be, are subject to the payment of the purchase money on the lands; but they would not be subject to the payment of the money expended for improvements, and this seems to be conceded." See, also, *Campbell v. Babcock*, 27 Wis. 512. It is true the statute does not extend the exemption of the homestead to the laborers', mechanics', and purchase-money liens; but we do not understand that any such liens had been acquired in this case. The court below found that Edwards advanced to the husband various sums of money, to be used in paying laborers, and for materials used in the construction of the house, and that for this indebtedness mechanics' liens existed on the premises. There has been no proof that any lien was perfected under the statute. Quite probably liens might have been enforced for some of these debts. As no steps were taken to perfect the liens, they really never became such, and when these debts were paid they stood upon the same footing as other debts which the husband owed. In respect to the taxes which were paid, they were a lien by statute. Sec. 1158. Our conclusion, therefore, is that the respondent can hold the premises for only the amount due on the Edwards contract, and the taxes paid by him. We are inclined to hold that all rent received from Dobkins should be applied on the general indebtedness of the husband to the respondent; but, in respect to all other debts — except the amount due on the contract and the taxes — the homestead right of the wife is paramount, and the respondent cannot hold the property as security for their payment. We do not see anything in the case which should estop the wife from insisting upon her right to the homestead. She may be benefited by the improvements made upon the premises; so the wife was in *Spear v. Evans*, but this fact did not affect her right to insist on the exemption. Because debts were paid for labor

and materials which went to improve the premises, this does not give such debts any preference over other debts, so far as the homestead right is concerned.

*By the Court.*— The judgment of the circuit court is reversed, and the case is remanded with direction to enter judgment in accordance with this opinion.

