PALMER, Appellant, vs. HAWES, Respondent.

*October 22 — November 17, 1891.*

*Homesteads: Change of: Property occupied partly for business purposes: Fraudulent conveyances: Attachment.*

The defendant, being insolvent, moved from her homestead, which was mortgaged, to the second floor of a three-story brick block, the first floor of which was occupied as a store and the third floor as a photograph gallery, for the purpose of making such block her homestead. To the holder of a mortgage on the block she gave a second mortgage on her prior homestead, and also transferred to him other property, for the purpose of reducing the incumbrance upon the block. No fraudulent purpose on her part being shown, it is *held* that these conveyances were not fraudulent as to creditors so as to sustain an attachment.

APPEAL from the Circuit Court for *Rock* County.

The action was commenced July 28, 1887, upon a promissory note, against *Mrs. Cornelia J. Hawes* and one Williamson. On the same day, upon plaintiff's affidavit,— stating that he had good reason to believe and did believe that *Mrs. Hawes* had assigned, conveyed, disposed of, and concealed a part of her property, and was about to assign, convey, dispose of, and conceal the remainder thereof, with intent to defraud her creditors, and that the defendant Williamson was insolvent,— an attachment was issued and levied upon property of *Mrs. Hawes.* She duly traversed said affidavit, and the trial of the issue raised by such traverse resulted in findings in her favor, and an order vacating the attachment. From that order the plaintiff appeals.

The note in suit matured January 23, 1887, and there was then due thereon the sum of $7,852.44. At about this time the plaintiff pressed *Mrs. Hawes* to pay the note or give security. *Mrs. Hawes* then owned a dwelling-house in the Third ward of the city of Janesville, which she occupied as her homestead, and which was worth from $3,500 to $4,500, but was incumbered by a mortgage for $2,000. She also owned a brick block on Milwaukee street, worth from $8,000 to $10,000, upon which was a mortgage for $4,000; also about $15,000 of the stock of the Wisconsin Shoe Company, the value of which was then uncertain, but which afterwards proved to be worth about eleven cents on the dollar. The brick block was occupied on the first floor as a store, on the second floor as a residence flat, and on the third floor as a photograph gallery.

On February 22, 1887, acting under the advice of counsel and friends, *Mrs. Hawes* moved from her house in the Third ward to the rooms on the second floor of the block on Milwaukee street. She did this, as she testified, in order to make the block her homestead. On March 1, 1887, she gave to one B. F. Rexford, who held the mortgage for $4,000

upon the Milwaukee street block, a second mortgage upon her Third ward property for $4,000 to secure the same note which was secured by the mortgage on the block. And on July 28, 1887, the day on which the action was commenced, she transferred to said Rexford the whole of her stock in the shoe company, above mentioned. This mortgage and this transfer of the shoe stock to Rexford she testified were for the sole purpose of paying off, as far as possible, the mortgage on her homestead. They and the change of residence were the acts relied upon to sustain the attachment. Other facts are stated in the opinion.

For the appellant there was a brief by *Winans & Hyzer*, and oral argument by *John Winans*. They contended, *inter alia*, that the intent to defraud was the sole issue raised by the traverse. This issue must be determined by the facts, and not upon the bare disclaimer of an intention to defraud. That such was the intention is the inevitable conclusion from the undisputed facts, and it must be presumed that *Mrs. Hawes* intended the necessary results of her acts. *Comstock v. Bechtel*, 63 Wis. 656; *Miller v. McNair*, 65 id. 452. What was done, if successful, will give *Mrs. Hawes* a double exemption, and is therefore fraudulent. *Carhart v. Harshaw*, 45 Wis. 340, 352; *Allen v. Perry*, 56 id. 178. See, also, *In re Wright*, 3 Biss. 359; *Pratt v. Burr*, 5 id. 36; *Riddell v. Shirley*, 5 Cal. 488.

For the respondent there was a brief by *Fethers, Jeffris & Fifield*, and oral argument by *M. G. Jeffris*. They argued, among other things, that the change of homestead was a legal right. The statute giving a homestead is to be construed liberally. *Zimmer v. Pauley*, 51 Wis. 282; *Fitzell v. Leaky*, 72 Cal. 477; *Jacoby v. Parkland D. Co.* 41 Minn. 227; *Hawthorne v. Smith*, 3 Nev. 182; *Cipperly v. Rhodes*, 53 Ill. 346; *O'Donnell v. Segar*, 25 Mich. 367. *Mrs. Hawes* had also a perfect legal right to prefer one creditor over another. *Menzesheimer v. Kennedy*, 75 Wis. 411; *Lord v.*

*Devendorf*, 54 id. 491; *Landauer v. Vietor*, 69 id. 434–40; *Ingram v. Osborn*, 70 id. 184; *Greene & Button Co. v. Remington*, 72 id. 648–54; *Winner v. Hoyt*, 66 id. 227; *Allen v. Kennedy*, 49 id. 549; *Tootle v. Caldwell*, 30 Ark. 125; *Colbern v. Robinson*, 80 Mo. 541; *Dougherty v. Cooper*, 77 id. 528; *Cromelin v. McCauley*, 67 Ala. 542; *Hodges v. Coleman*, 76 id. 103.

COLE, C. J.   There is no room to doubt that *Mrs. Hawes* had the right to abandon the house and lot in the Third ward, where she and her husband had lived for many years, and occupy the brick store on Milwaukee street as and for a homestead.   The law would permit her to make that change, and creditors could not object to it, though it might be unfavorable to their interests.   True, it appeared that the first floor of this building had been used and occupied as a store, and the third floor as a photograph gallery, but the second floor had been occupied as a residence.   The occupation and construction of the building show that it might well have the character of a homestead impressed upon it, and the proof is abundant that *Mrs. Hawes* had selected and intended to occupy it as her homestead.   Since the case of *Phelps v. Rooney*, 9 Wis. 71, it has been held that the building need not be devoted exclusively to the use of a home for the family in order to retain the character of a homestead, but parts of it might be used for business purposes.   *Harriman v. Queen Ins. Co.* 49 Wis. 71. So the fact that portions of the brick store were used for other purposes than as a residence for the family would not deprive it of its homestead character, nor prevent *Mrs. Hawes* from acquiring homestead rights therein.   Of course, when she selected and occupied the store for her homestead, she necessarily abandoned or lost her rights in her former home.   A person can have but one home at a time. "He may have several houses at once, but only one can be his home at a time." *Jarvais v. Moe*, 38 Wis. 440.

It seems to us equally clear that *Mrs. Hawes* might have sold her home in the Third ward and applied the proceeds of the sale to the payment of a mortgage on the brick block, which B. F. Rexford held, and no creditor could justly complain of such an application of the money. As her counsel says, she had a perfect legal right to prefer one creditor over another, and to pay one just debt in preference to another. Now, suppose Rexford, instead of taking a second mortgage on the Third ward property, had purchased the equity of redemption in that property, and had applied, with the consent of *Mrs. Hawes*, its value to the reduction of his mortgage on the brick store. Could a creditor complain of such a transaction as a legal fraud upon his rights? We think not. This, in fact, is what the learned circuit court found that the transaction amounted to. The circuit judge states that he finds that the mortgage given, mentioned in the testimony, on or about the 1st of March, 1887, was given for the purpose of reducing the indebtedness upon the homestead,— meaning the store,— and for no other purpose. This finding is amply justified by the evidence, and could not consistently have been otherwise. We see no element of fraud in the transaction, nor anything of which creditors could complain. It is very obvious that when a debtor pays one creditor his ability or means to pay others is diminished, but that does not make such payment fraudulent in law. Therefore we fully agree with the court below in the conclusion that the evidence fails to show that *Mrs. Hawes* made any transfer of her property with intent to defraud her creditors. The transfer of the shoe stock to Rexford was for the purpose of reducing the incumbrance on the homestead, and so the court finds. This seems to have been an honest and fair transfer. If she had had the money value of that stock, she could so have applied it on the mortgage, and no creditor could object to it.

But the plaintiff's counsel says that *Mrs. Hawes* prac-

tically admitted that she made these transfers of her property to defeat the claim of *Dr. Palmer.*  We do not think that this is a fair construction of her testimony.  She was greatly embarrassed, and had not the means to pay the debts which were pressing on her.  She wished to secure a home and improve her pecuniary condition.  She took advice of counsel as to what she had better do under the circumstances.  She changed her homestead, and made the transfers she did, following the advice given her.  It is true, she was utterly insolvent at the time, but the evidence fails to show any fraudulent purpose on her part in preferring one creditor to another, or in giving Rexford the security she did for his debt.  She was plainly endeavoring to save the store for her homestead, and she resorted to no unlawful means to accomplish that end.

The ground stated in the affidavit for the attachment was that *Mrs. Hawes* had assigned, conveyed, disposed of, and concealed a part of her property with intent to defraud creditors, and was about to make such a disposition of the remainder with a like fraudulent intent.  The evidence does not establish the charge, and the court below properly vacated the attachment on the traverse.

*By the Court.*— The order of the circuit court is affirmed.