Scott, Trustee, Appellant, vs. Holman and another, Re-
spondents.

*February 5—March 21, 1903.*

*Fraudulent conveyance: Purchase of homestead by insolvent in wife's
name: Rebutting presumption of fraud: Resulting trust.*

Pending an action against a husband, his wife purchased a house
and lot for $970, paying $700 down, taking title in her own
name, and giving back a mortgage for $270. Of the amount
paid down $250 was the wife's separate property and $450 had
been saved by the husband to buy a homestead. Before judg-
ment against the husband in said action, they occupied the
premises as a homestead. After judgment and before execu-
tion was issued the husband paid upon the mortgage $170 saved
by him out of his earnings after the purchase. Afterwards the
husband was declared bankrupt. *Held*, that the facts stated
rebut the presumption arising under sec. 2078, Stats. 1898, that
the conveyance to the wife was fraudulent as to the husband's
creditors.

Appeal from a judgment of the circuit court for Waupaca
county: J. J. Fruit, Judge. *Affirmed.*

On February 26, 1900, one Charles A. Spencer commenced
an action for the breach of a lumbering contract entered into
by him November 29, 1892, with the defendant *Luzern Hol-
man* and one Ira W. Baggs. Pending said action, and on
February 21, 1901, the defendant *Margaret Holman,* wife of
*Luzern Holman,* with knowledge of the pendency of such ac-
tion, purchased of one Milo Clark the house and lot in the city
of Waupaca, therein described, and was to pay therefor $970.
She paid $700 cash down at such purchase, of which $250

was of her own money and $450 thereof she received from her husband, *Luzern Holman,* about the time of such purchase. At the same time Milo Clark conveyed the house and lot to the defendant *Margaret,* and she gave back to him a note for $270, secured by mortgage on the house and lot. The value of the house and lot and appurtenances did not exceed $1,000, and the lot does not exceed one fourth of an acre. The only buildings upon the lot are a dwelling house and stable. *Margaret* and her husband moved into the house and on the premises March 1, 1901. On March 26, 1901, Spencer recovered judgment in the action so pending against *Luzern Holman* and Ira W. Baggs for $1,100 damages and costs, and the same was duly docketed March 30, 1901. On April 15, 1901, *Luzern Holman* paid on the note and mortgage $70, which he had saved out of his earnings between February 21, 1901 and that time. On June 25, 1901, he paid thereon the further sum of $100, which he had saved from his earnings between April 15, 1901, and that time. Execution was issued on such judgment July 1, 1901, and the same was returned wholly unsatisfied July 19, 1901. On August 27, 1901, the defendant *Luzern* was duly examined before the county judge in proceedings supplementary to such execution. On August 30, 1901, *Luzern* was adjudged a bankrupt on his voluntary petition in the district court of the United States for the Eastern District of Wisconsin. On September 26, 1901, the plaintiff was appointed trustee of his estate in bankruptcy, and accepted the trust.

Thereupon the plaintiff, as such trustee, commenced this action to have the transfer and gift of the moneys so advanced and paid by the husband to the wife and by her used in the purchase of the house and lot, and of the moneys paid by him on the note and mortgage to Clark, adjudged fraudulent and void as to the creditors of the husband, and that the house and lot, mentioned, be charged and impressed with a trust in favor of the plaintiff for the amount of such moneys, and that the

defendants be decreed to convey the same to the plaintiff to satisfy said judgment. The defendants separately answered by way of admissions, denials, and counter allegations.

At the close of the trial the essential facts were stipulated by the parties, and the court found, in effect, the facts stated, and also, in addition thereto, that the defendants were married in 1898; that at the time of such marriage the defendant *Margaret* possessed $250, which she had kept and invested as her separate property; that there is still due on the note and mortgage to Clark $100; that ever since their marriage the defendants have been saving money to buy a home; that they have always been residents of the state, and down to the time of such purchase lived in a rented house in Waupaca; that they have lived in and occupied the house and lot in question ever since March 1, 1901; that the husband has paid on the house and lot and mortgage in the aggregate $620; that the wife knew that her husband had a lawsuit with Spencer; that the only thing she ever heard her husband say about it was that he did not owe Spencer anything; that she believed that her husband could hold a house and lot as exempt without giving it to her; that she claimed the house and lot as her homestead, and exempt under sec. 2983, Stats. 1898, and the husband claims that whatever interest he has in the house and lot is his homestead and exempt from seizure and sale on execution, under sec. 2983, Stats. 1898, as amended.

And as conclusions of law from such facts the court found that the money furnished by the defendant *Luzern Holman* to his wife, with which she partly paid for their homestead, constituted no fraud; that no fraud, either in law or in fact, was committed by the defendant *Luzern Holman;* and that judgment should be entered in favor of the defendants, and that the plaintiff's complaint herein should be dismissed on the merits, with costs in favor of the defendants; and ordered judgment to be entered accordingly. From the judgment so entered the plaintiff appeals.

For the appellant there was a brief by *Cate & Dahl,* and oral argument by *G. M. Dahl.* They contended, *inter alia,* that where title to property is taken by the wife, the husband partially or wholly paying the consideration money, no trust results in favor of the husband; he has no interest in the premises. A trust does result in favor of the creditors of the husband and neither the husband nor the wife can claim a homestead in the premises. *Rogers v. McCauley,* 22 Minn. 384; *Sumner v. Sawtelle,* 8 Minn. 309; *Hamill v. Henry,* 69 Iowa, 752, 28 N. W. 32; *Fairbairn v. Middlemiss,* 47 Mich. 372, 11 N. W. 203.

*John C. Hart,* for the respondents.

CASSODAY, C. J. Counsel for the plaintiff insist that the case is governed by two sections of our statutes, which declare that:

"When a grant for a valuable consideration shall be made to one person and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment is made; but the title shall vest in the person named as the alienee in such conveyance subject only to the provisions of the next section."

"Every such conveyance shall be presumed fraudulent as against the creditors of the person paying the consideration, *and when a fraudulent intent is not disproved* a trust shall result in favor of such creditors to the extent that may be necessary to satisfy their just demands." Secs. 2077, 2078, Stats. 1898.

The whole consideration paid for the house and lot in question was $970. Of that sum the husband furnished to his wife at the time of her purchase $450, and subsequently he paid upon the note and mortgage which she gave back to secure a part of the purchase price $170, making his contribution to the purchase of the house and lot $620; and counsel contend that under the statutes quoted such payment by the husband, to the amount stated, must be presumed to be fraud-

ulent as against his creditors, and to that extent the wife must be regarded as holding the title to the house and lot in trust for such creditors. But by the express language of the last section quoted such can only be the result "when a fraudulent intent is not disproved." Here the court found from the admitted facts that there was no such fraudulent intent. Counsel insist that the presumption of such fraudulent intent has not been rebutted, and yet counsel concede, as they must under the decisions of this court, that it would have been perfectly legitimate for the husband to have purchased the house and lot in question, and taken the title thereof in his own name, and held it as his homestead, and then conveyed it to his wife, without subjecting it to the claims of his creditors. *Hibben v. Soyer,* 33 Wis. 319; *Pike v. Miles,* 23 Wis. 164. This is on the theory that it may be legitimate for an insolvent debtor to use moneys or nonexempt property in procuring a homestead. This court has held that "the mere fact that an exchange of nonexempt for exempt property might be highly advantageous to an insolvent debtor is not conclusive evidence of an intention to defraud his creditors." *Kapernick v. Louk,* 90 Wis. 232, 234, 62 N. W. 1057; *Palmer v. Hawes,* 80 Wis. 474, 50 N. W. 341. Since he may do that, we perceive no good reason why he may not join with his wife, who may have separate property of her own, in procuring a homestead for both of them. Thus it was held by this court more than forty years ago that, "A homestead being exempt from forced sale upon execution, it matters not whether the title remain in the execution debtor or be held by his wife as his trustee." *Dreutzer v. Bell,* 11 Wis. 114; *Rozek v. Redzinski,* 87 Wis. 525, 531, 58 N. W. 262. At the time of the purchase of the house and lot the wife had $250, and her husband had $450, which he had saved from his earnings for the purpose of buying a homestead. There was a lawsuit pending against the husband and another man upon a contract made eight years before. There is no evidence of any other claims being made

against him at the time.    They used the moneys they both had in buying a homestead and taking the title in the name of the wife.    There is nothing unnatural in the transaction, nor anything indicating an intent to defraud creditors.    It was said by the late Justice NEWMAN, speaking for the court:

"The right of the owner to have his homestead exempt from liability in any form for his debts is superior to the equity of a creditor to have it applied to the payment of his debt.    However it may have been formerly, and in the absence of a statute declaring his right, it is now the settled policy of the law to prefer the homestead right as against the rights of creditors."    *Clancey v. Alme,* 98 Wis. 230, 73 N. W. 1014.

The admitted facts rebut any presumptions of fraudulent intent arising from the statute.

*By the Court.*—The judgment of the circuit court is affirmed.