BARTLE, Appellant, vs. BARTLE, Respondent.

*May 21—June 20, 1907.*

*Homesteads: Exemption: Tenants in common: Hotel property: Implied consent of one tenant to occupancy by cotenant: Temporary removal: "Purchase-money liens:" Fraudulent conveyances: Husband and wife: Estates of decedents: Subjecting assets to payment of debts.*

1. Under sec. 2983, Stats. (1898), the right of a tenant in common to exemption of his interest in land occupied by him as a homestead with the consent of his cotenant was as effectually protected as by ch. 269, Laws of 1901; and, especially where such homestead interest was of less value than $5,000, it was immaterial whether debts sought to be collected from the proceeds of the sale of such interest were incurred before or after the enactment of said ch. 269.

2. Evidence showing, among other things, that a tenant in common of a hotel building, who had sold his homestead and invested the proceeds in the building, occupied it as his dwelling, with the consent of his cotenant, until ill health compelled him to remove, and that he left household goods therein and stated that he intended to reoccupy the hotel as his homestead when his health permitted, is *held* sufficient to show that he had acquired a homestead right therein.

3. Mere temporary removal under such circumstances, with the intention of reoccupying the premises as his homestead, did not impair the homestead right.

4. Acquiescence on the part of one tenant in his cotenant's occupation as a homestead of the land held by them in common, under such circumstances as raise a presumption of consent, suffi-

ciently shows "implied consent" thereto, within the meaning of sec. 2983, Stats. (1898).

5. Where money is loaned upon a promissory note, the facts that it was understood that it should be used and that it actually was used in the construction of a building on the borrower's land give the lender no purchase-money lien upon the land within the meaning of sec. 2983, Stats. (1898). The "purchase-money liens" there referred to mean vendors' liens for purchase money.

6. Where a homestead, exempt from execution, was transferred by the owner to his wife, such transfer cannot, after his death, be set aside by his creditors, nor can the proceeds of a sale of such homestead by the widow be reached by such creditors under sec. 3835, Stats. (1898).

APPEAL from a judgment of the circuit court for Iowa county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

This is an action to charge property in the hands of defendant which came to her through her deceased husband with the payment of his debts. The action was tried in the circuit court for Iowa county, and resulted in judgment for defendant establishing her right to her portion of the proceeds of sale of the property. The court found substantially that defendant is the widow of George Bartle, deceased, who died intestate May 16, 1902; that in April, 1900, said Bartle and his brother, J. L. Bartle, were engaged in building a hotel known as Hotel Grand, situated in Dodgeville, Iowa county, Wisconsin, on real estate which they then owned, and on April 28, 1900, they borrowed $1,000 from plaintiff, *Mary Bartle,* to be used and which was used in the construction of the Hotel Grand, and gave therefor their promissory note; that for three years after March, 1902, the defendant paid one half of the interest on said note out of the rents and profits from said hotel property; that after the death of George Bartle an administrator was appointed; that plaintiff's claims as well as other claims were allowed against said estate, which claims remain unpaid except the undertaker's claims; that the administrator of George Bartle's estate has received no

assets belonging to the estate, and that the personal assets of the estate are not sufficient to pay the expense of administration and debts of prior class to that of plaintiff and other claims allowed; that on the 26th day of March, 1902, George Bartle, deceased, deeded to defendant, in consideration of one dollar and natural love and affection, the hotel property, which deed was witnessed, acknowledged, and recorded; that at the time the construction of the hotel was commenced George Bartle and his wife, the defendant, lived on a part of said hotel property, which was then their homestead, they owning no other homestead at that time; that shortly prior to the commencement of the construction of said hotel George Bartle and defendant had a homestead which they sold for $1,300, which sum was used in building the Hotel Grand; that for a time, while the Hotel Grand was being constructed, George Bartle and defendant lived in a rented house; that in September, 1900, George Bartle and defendant moved into the third story of said Hotel Grand, and occupied said story as their homestead with the consent of J. L. Bartle until July 1, 1901, they having no other homestead at the time, the lower part of the hotel being otherwise occupied; that on July 1, 1901, said George Bartle and defendant moved to the second story of said Hotel Grand and kept hotel therein, and occupied said premises as their homestead with the consent of said J. L. Bartle until February 1, 1902; that on February 1, 1902, said George Bartle and defendant moved out of said hotel on account of ill health of George Bartle; that said hotel property on February 1, 1902, and March 26, 1902, was the homestead of George Bartle and defendant, with the implied consent of J. L. Bartle; that when George Bartle and defendant left said hotel February 1, 1902, they moved into a rented house and continued to live there until the death of George Bartle, not having acquired any other homestead; that when George Bartle and defendant left said hotel they considered and claimed it to be their homestead, and left it

because of ill health, and intended to return and occupy the
same as a homestead when George Bartle's health would per-
mit; that when George Bartle and defendant left said hotel
they reserved two rooms for storage purposes and kept the
key, and stored in said rooms articles of household furniture,
pictures, and their marriage certificate; that there was a
mortgage on said hotel property, and the interest of George
Bartle was liable for half of said mortgage debt; that the
interest of said George Bartle in said hotel property at the
time he transferred it to defendant was about $2,800; that on
March 1, 1905, defendant sold the undivided half of said
hotel property, being the interest conveyed to her by said
George Bartle, and received about $2,800 net proceeds there-
for. The evidence shows defendant intends to invest the pro-
ceeds received from sale of the hotel property in a homestead.

Plaintiff appealed from that part of the judgment which
provided that she take nothing by her action so far as her
complaint seeks to subject to the claims of creditors of George
Bartle, deceased, any part of the moneys received by the de-
fendant from the sale of the Hotel Grand property, and con-
firming the defendant in her right to the proceeds of the
sale of said premises.

For the appellant the cause was submitted on the briefs of
*J. P. Smelker.*

For the respondent there was a brief by *Spensley & Mc-
Ilhon* and *T. M. Priestley,* and oral argument by *Calvert
Spensley.*

KERWIN, J. The only questions for determination upon
this appeal are: (1) Whether George Bartle, deceased, occu-
pied the Hotel Grand as his homestead. (2) If he did, did
he ever forfeit his homestead rights? (3) Has the plaintiff
a purchase-money lien on defendant's portion of the proceeds
of the hotel property, or is she entitled to subject such pro-
ceeds to the claims of creditors?

·1. Counsel for appellant attacks the law respecting homestead rights in real estate held by tenants in common as it stood before it was amended by ch. 269, Laws of 1901, and contends that ch. 269, Laws of 1901, does not apply, because it went into effect after the plaintiff's debt was contracted. *West v. Ward,* 26 Wis. 579, is cited to our attention upon this point. When this case was decided there was no statute allowing homestead rights in lands held in common, and this court, in referring to the fact that the statute made no provision in such case, said, at page 581:

"The law might very reasonably provide that in such case the undivided interest should be exempt. So it might also very reasonably provide that a homestead might be claimed in any undivided interest, establishing at the same time some mode by which it should be set apart and ascertained. Perhaps such provisions would be no more than the spirit of the constitutional provision upon this subject fairly requires. But the legislature has done neither, and the courts cannot supply the defect, if it is one. The law as made provides only for a homestead to be set apart by metes and bounds out of that which is owned and occupied in severalty."

After this decision the legislature sought to remedy the defect pointed out in *West v. Ward,* and we find in sec. 2983, R. S. 1878, the provision that "such exemption shall extend to land, not exceeding, altogether, the amount aforesaid, owned by a husband and wife jointly, or in common, and to the interest therein of a tenant in common or two or more tenants in common having a homestead thereon, with the consent, expressed or implied, of the cotenants, and to any estate less than a fee held by any person by lease or otherwise." This provision was continued in sec. 2983, Stats. (1898), and substantially in ch. 269, Laws of 1901, the latter amendment limiting the value of the homestead to $5,000. Before this amendment the cotenant was entitled to the undivided interest for a homestead with the consent of his cotenant, regardless of its value, and in case of sale the proceeds were ex-

empt. There can be no doubt, therefore, that the law as it stood before 1901 as effectually protected a cotenant's homestead right as it does since the passage of ch. 269, Laws of 1901, so we see no force in the position of counsel that the amendment of 1901 went into effect after the debt of plaintiff had been contracted. The law as it stood in sec. 2983, Stats. (1898), prior to 1901, was ample to protect a cotenant when the occupation was with the consent, express or implied, of the cotenant. *West v. Ward,* 26 Wis. 579; *Phelps v. Rooney,* 9 Wis. 70; *Upman v. Second Ward Bank,* 15 Wis. 449; *Harriman v. Queen Ins. Co.* 49 Wis. 71, 5 N. W. 12; *Binzel v. Grogan,* 67 Wis. 147, 29 N. W. 895; *Palmer v. Hawes,* 80 Wis. 474, 50 N. W. 341; 21 Cyc. 458. Moreover, in the instant case the homestead interest is of less value than $5,000, hence comes within ch. 269, Laws of 1901.

But it is insisted that the findings to the effect that George Bartle had a homestead in the hotel are not supported by the evidence. It is too well settled to admit of discussion or citation of authorities that this court cannot disturb the findings below unless against the clear preponderance of the evidence. *Treseder v. Burgor,* 130 Wis. 201, 109 N. W. 957; *Philip Meyer Co. v. Sheboygan C. Co.* 102 Wis. 535, 78 N. W. 1119; *Crawford v. Christian,* 102 Wis. 51, 78 N. W. 406; *Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119. It is insisted that the evidence is conclusive that the hotel was built to rent. But the acts and declarations of George Bartle do not support this contention. As the court below found, he occupied the hotel as his dwelling and left it because of ill health; that at the time he so occupied it he had no other homestead, and had no other up to the time of his death. There is evidence that he sold the homestead he owned and put the proceeds into the hotel building; that he intended to keep the hotel as his homestead, and return to and reoccupy it as his homestead when able. There is direct evidence that the hotel was not built to rent;

also considerable evidence that George Bartle intended to oc-
·cupy the hotel as his dwelling, coupled with the fact that he
did so occupy it until his health failed, and that he ceased to
·occupy it because of ill health, leaving household furniture
stored therein, and stating that he intended to return when
he regained his health.

But it is argued there was no consent, express or implied,
·on the part of J. L. Bartle.   Exemption laws should be lib-
·erally construed to carry out the legislative purpose, and it
is quite clear from the language used in the statute, "ex-
pressed or implied" consent, that the legislature intended to
make acquiescence on the part of the cotenant, under such
·circumstances as raise a presumption of consent, sufficient
without further proof.   The word "consent" is sometimes
treated as synonymous with "assent," "acquiescence," and
"concurrence."   2 Words & Phrases, 1439.   And the word
"consent" has been defined to be an agreement of the mind
to what is proposed or stated by another.   *Plummer v.
Comm.* 1 Bush, 76.   It has also been defined as "the accord
·of minds," "to think alike," "approval," "approbation."
8 Cyc. 584.   "Implied consent" is defined to be "that man-
ifested by signs, actions, or facts, or by inaction or silence,
which raise a presumption that the consent has been given."
Black, Law Dict. 254; Bouv. Law Dict. 400.   It is manifest
that the use of the words "expressed or implied" consent in
the statute was for the purpose of obviating the necessity of
proof of consent directly given either *viva voce* or in writing.
*White v. People,* 81 Ill. 333, 337; *State v. Millain,* 3 Nev.
409; *Eldridge v. Adams,* 54 Barb. 417, 421; Bouv. Law
Dict. 400.

2. The court below found that George Bartle moved out
of the hotel because of ill health, and intended to return and
reoccupy the same as a homestead when his health would
permit, and that he reserved rooms therein, kept the key, and
stored household furniture therein, and did not forfeit his
homestead rights.   We shall not review the evidence upon

this point, but will say that after careful examination we find it sufficient to support the findings. The mere temporary removal under the circumstances disclosed by the evidence with the intention to reoccupy was not sufficient to impair the homestead rights of George Bartle in the hotel property. Sec. 2983, Stats. (1898); *McDermott v. Kernan,* 72 Wis. 268, 39 N. W. 537; *Herrick v. Graves,* 16 Wis. 157; *Phillips v. Root,* 68 Wis. 128, 31 N. W. 712; *Shirland v. Union Nat. Bank,* 65 Iowa, 96, 21 N. W. 200; *Tumlinson v. Swinney,* 22 Ark. 400, 76 Am. Dec. 432; *Omaha B. Asso. v. Zeller,* 4 Neb. (Unof.) 198, 93 N. W. 762; *Blumer v. Albright,* 64 Neb. 249, 89 N. W. 809; *Black v. Black's Adm'r* (Ky.) 12 S. W. 147; *Davis v. Prichard* (Ky.) 7 S. W. 549; *Kenley v. Hudelson,* 99 Ill. 493; *Edwards v. Reid,* 39 Neb. 645, 58 N. W. 202; *Duffey v. Willis,* 99 Mo. 132, 12 S. W. 520; *Reske v. Reske,* 51 Mich. 541, 16 N. W. 895.

3. It is further insisted that plaintiff has a purchase-money lien. This claim is based upon the fact that the money of plaintiff was furnished to construct the hotel and was actually used for that purpose. We have been cited to no case, and have found none, where a lien has been enforced independent of statute upon facts similar to those in the case before us. If upon equitable principles a lien can be enforced against real estate merely because the creditor's money has gone into buildings situate thereon, no reason is perceived why such lien should not be enforced in equity on account of building material furnished and attached to the realty independent of compliance with mechanic's lien statute. It is very clear, therefore, that where money is loaned, as in this case, upon a promissory note, the mere fact that it was understood it should be used and was in fact used in the construction of buildings upon real estate gives the creditor no lien upon such real estate. The cases cited by plaintiff are purchase-money lien cases, and rest upon entirely different principles. *Tobey v. McAllister,* 9 Wis. 463, was where this court enforced a lien on real estate for the purchase money, when the

vendor was induced by fraud to accept notes and mortgages for balance of purchase money which were worthless. The court bases the decision on the principle that the purchaser of property ought not to be allowed to keep it, and not pay the consideration money, under the circumstances disclosed. The decision was based upon the doctrine of the right to enforce a vendor's lien. *Willard v. Reas,* 26 Wis. 540, was also an action to enforce a vendor's lien for unpaid purchase money, and in this case the doctrine is recognized that taking a note or bond or distinct security by itself, or taking the responsibility of a third person, is evidence that the seller did not repose upon the lien, but upon independent security, and it discharged the lien. *De Forest v. Holum,* 38 Wis. 516, was an action to enforce payment of purchase money by foreclosure on the ground of vendor's lien. *Crowe v. Colbeth,* 63 Wis. 643, 24 N. W. 478, is also an action to enforce a vendor's lien. It will be seen that the doctrine of the foregoing cases cited by appellant have no analogy to the instant case. Counsel for appellant sees no equity in allowing a vendor's lien for the purchase money of a lot and denying it to one who furnishes money to build a house on the lot; but, whatever the reason of the rule may be, it is clear under the authorities that the lien is not allowed in the latter case, but is confined to the vendor's lien. 2 Warvelle, Vendors (2d ed.) § 690; *Wilkinson v. Parmer,* 82 Ala. 367, 3 South. 4; *Peters v. Tunell,* 43 Minn. 473, 45 N. W. 867; *Exch. & D. Bank v. Bradley,* 15 Lea, 279; 2 Warvelle, Vendors (2d ed.) §§ 678, 686. Sec. 2983 exempts homesteads from the debts of the owner, except laborers', mechanics', purchase-money liens, mortgages, and taxes. The purchase-money liens referred to in this statute clearly mean vendors' liens for purchase money. *Carey v. Boyle,* 53 Wis. 574, 581, 11 N. W. 47; *Spear v. Evans,* 51 Wis. 42, 8 N. W. 20; *Chopin v. Runte,* 75 Wis. 361, 44 N. W. 258.

4. It is further insisted by appellant that if she cannot maintain her claim for a lien, still the proceeds can be reached

in this action under sec. 3835, Stats. (1898), and several authorities are cited upon this proposition. The interest of George Bartle in the hotel being his homestead was exempt from all claims of his creditors, and the transfer to defendant was valid and cannot be set aside by his creditors nor the proceeds in defendant's hands subjected to their claims under sec. 3835, Stats. (1898). The authorities cited under this branch of appellant's argument, therefore, have no application, since they all relate to property not exempt from execution.

We therefore hold that the findings are supported by the evidence; that the interest of George Bartle in the Hotel Grand property was his homestead, and that the conveyance thereof to defendant was valid; that plaintiff had no lien upon the hotel property or the assets in the hands of defendant derived therefrom. It follows, therefore, that the judgment must be affirmed.

*By the Court.*—The judgment of the court below is affirmed.