Brooks and another, by guardian *ad litem,* Appellants, vs. Dike and wife, Respondents.
In re Brooks.

*February 3—February 24, 1914.*

*Tax titles: Fraudulent conveyance by original owner: Rights of infant grantees: Quieting title: Invalid tax deed: Judgment.*

1. A voluntary conveyance to infant grantees of land which is subject to the lien of an outstanding tax certificate, while ineffectual to confer upon such infants any right or title which would hinder or delay the certificate holder in respect to foreclosure and sale, is nevertheless good between the parties and entitles the grantees to assert all those rights in and to the land which, had the conveyance not been made, the grantor himself could assert against a tax title based upon such certificate. *Corry v. Shea,* 144 Wis. 135, distinguished.

2. The tax-title holder cannot in such a case urge the fraudulent character of a deed to the infant grantees to prevent them from attacking his tax title upon grounds which would have been available to their grantor, or from redeeming within the time redemption could have been made had the deed to the infants never been executed.

3. Even if such infant grantees, by reason of taking with knowledge that the purpose of the deed was to hinder and delay the holder of the tax certificate, were to be regarded as in equal delict with their grantor, they would not be thereby barred from maintaining an action to quiet title as against the grantee in a tax deed who took the same without giving notice of his application therefor in a case where such notice was required.

4. In an action to quiet title, brought against a tax-title claimant, under sec. 3186, Stats., if the tax deed be adjudged void the plaintiff will be entitled to judgment upon making the payments mentioned in sec. 1210h.

APPEALS from a judgment and an order of the circuit court for Douglas county: FRANK A. ROSS, Circuit Judge. *Reversed.*

In the action above entitled the infant appellants, claiming to be the owners in fee of the northeast quarter of the northwest quarter of section 22, township 48 north, range 14 west, except the right of way of the Eastern Railway Company of Minnesota thereon, and that such claimed premises are vacant and unoccupied except the right of way of the *Minneapolis, St. Paul & Sault Ste. Marie Railway Company* thereon, averred that the defendants, *Henry B. Dike* and *Mary E. Dike,* make some claim to all of said northeast quarter of the northwest quarter except these two right-of-way tracts, and demand judgment that the plaintiffs' claim be established against any claim of the defendants and that the defendants be forever barred against having or claiming any right or title to the land adversely to the plaintiffs.

In the special proceeding above entitled the same infants averred their ownership at all times since July 29, 1903, of the same land except the right of way of the Eastern Railway

Company of Minnesota, and that during the years 1908 and 1909 the *Minneapolis, St. Paul & Sault Ste. Marie Railway Company* located, graded, and constructed its roadbed on their land and has since maintained and operated its railroad upon that part of the forty-acre tract above described. That the said railway company did so without having acquired title to the land and without having instituted any proceedings for condemnation or other acquisition of said land or any part thereof. The infants prayed for an order fixing a time and place for a hearing and for the appointment of commissioners to appraise and determine the value of the land so taken by said railway and the damages sustained by petitioners.

In the action, after trial and hearing, the court made findings of fact beginning with the recital that the action was commenced on or about July 7, 1910, and the special proceeding on the same day, and that many if not all the questions of law and fact involved are common to both, and that the property alleged to have been taken by the railway company was so taken and the title held under a conveyance from the defendants, *Henry B. Dike* and *Mary E. Dike,* his wife, to said railway company. The claim of title of said *Henry B. Dike* and wife to said land so conveyed was the same title claimed by them to the forty-acre tract in question. The parties having stipulated in open court to try said action and special proceeding together, the court made findings of fact which resulted in judgment for the defendants in the action and in an order dismissing the special proceeding.

It appears without substantial controversy that on and prior to July 29, 1903, J. Cora Smith was the lawful owner of the land in question. Findings are to the effect that on July 29, 1903, there was executed and delivered by J. Cora Smith to the infant plaintiffs, then aged twelve and fourteen years respectively, a deed including the land in controversy. At that time and for a long time prior thereunto the lands

described in said deed were heavily incumbered with delinquent and unpaid taxes, and the forty-acre tract first herein described was sold in May, 1902, for the taxes of 1901, and in May, 1903, for the taxes of 1902, and the county of Douglas held the tax certificates for said two years, but thereafter sold and assigned them for value to the defendant *Henry B. Dike,* who obtained tax deeds thereon which were executed in due form and recorded in the office of the register of deeds of the proper county on July 17, 1907. Under these tax deeds the defendants and the railway company claimed title, the railway company claiming under *Henry B. Dike* and wife by deed dated September 15, 1909, recorded September 17, 1909. J. Cora Smith made said deed to the infant plaintiffs voluntarily, without consideration, and with intent to hinder, delay, and defraud the holder of the tax certificates above mentioned of his lawful actions and rights to foreclose said certificates, and for the purpose of extending the time for redemption of said lands from the delinquent taxes represented by such certificates. It was further found that the alterations, changes, and erasures indicated by this deed were satisfactorily explained so as to admit the deed in evidence. The amount of taxes represented by the certificates purchased by *Henry B. Dike,* with interest thereon, and the amount of subsequent taxes paid or redeemed by him, with interest thereon, were found, and that the tax deeds to *Henry B. Dike* were issued on an affidavit of nonoccupancy made on July 11, 1907, also that on that date and for more than two years immediately preceding a large portion of the land covered by the tax certificates and tax deeds, comprising more than half its area, was continuously surrounded by a substantial wire fence and in the occupancy and possession of one Mrs. Carey by permission of the agent of the fee owner. Also that the Great Northern Railway Company was then and for several years had been in actual occupancy and possession of a right of way extending diagonally north and south across said forty-

acre tract, and containing about eight acres, and that no no-
tice of the application for such tax deeds was given to or
served upon any person, but such deeds were issued upon an
affidavit of nonoccupancy dated July 11, 1907.

As conclusions of law the court found that the deed from
J. Cora Smith to the infant plaintiffs of July 29, 1903, was
made for the purpose of hindering and delaying the holder
of the tax certificates mentioned of his lawful actions and
that said deed was and is illegal and void,· also that the tax
deed held by the defendant *Henry B. Dike* was illegal and
void, but notwithstanding this that the plaintiffs are not en-
titled to maintain the above action against *Henry B. Dike*
and wife nor the condemnation proceedings against the rail-
way company; and the judgment in the action and the order
in the special proceeding are final and apparently vest title
in the defendants as against plaintiffs.

For the appellants there was a brief by *Grace, Hudnall &
Fridley,* and oral argument by *George B. Hudnall.* They
contended, *inter alia,* that the deed to· the infant plaintiffs, if
made to hinder, delay, and defraud the holder of the tax cer-
tificate, was within the purview of sec. 2320, Stats.  *Corry
v. Shea,* 144 Wis. 135, 128 N. W. 892.  Hence it was merely
voidable as to the person injured, but good as between the
parties and effectual to pass the legal title.  *Clemens v. Clem-
ens,* 28 Wis. 637; *Davy v. Kelley,* 66 Wis. 452, 29 N. W.
232; *Gross v. Gross,* 94 Wis. 14, 68 N. W. 469; *French L.
Co. v. Theriault,* 107 Wis. 627, 83 N. W. 927; *Hyman v.
Landry,* 135 Wis. 598, 116 N. W. 236; *Mueller v. Bruss,* 112
Wis. 406, 88 N. W. 229.  The rights of the defendants were
no greater than if the conveyance had been made to adults.
*Ableman v. Roth,* 12 Wis. 81; *Castleman v. Griffin,* 13 Wis.
535; *Barber v. Kilbourn,* 16 Wis. 485; *Potter v. Necedah L.
Co.* 105 Wis. 25, 80 N. W. 88, 81 N. W. 118.

For the respondents there was a brief by *Luse, Powell &
Luse,* and oral argument by *L. K. Luse.*

TIMLIN, J. All the findings of fact of the learned circuit court seem to be supported by evidence. This includes the finding that alleged alterations appearing upon the deed of July 29, 1903, to the infant plaintiffs were sufficiently accounted for and explained so as to admit that deed in evidence. But the conclusions of law based on such findings are incorrect. The learned circuit court seems to have given the rule of the case of *Corry v. Shea,* 144 Wis. 135, 128 N. W. 892, an unwarranted extension. In that case the owner and holder of tax certificates, one at least of which was ripe for foreclosure, brought an action to set aside as invalid under sec. 2320, Stats., a voluntary conveyance, made at or about the time the right of foreclosure accrued, by the landowner to his infant son, for the purpose of extending the time for redemption, and thus hindering, delaying, or defeating the plaintiff's action of foreclosure. Under former decisions of this court construing statutes then and now in force, a conveyance to an infant of real estate upon which there were outstanding tax certificates of sale had the effect, if permitted to stand, to extend the time of redemption until that infant arrived at the age of twenty-one years and within one year thereafter. This, we considered, had become a rule of property and we did not feel at liberty to change it. Therefore, if the deed to the infant were held valid it conferred upon the infant greater rights than those possessed by his adult grantor and operated to hinder and delay a foreclosure suit upon the tax certificate, because the foreclosure decree therein would be subject to a right of redemption different from and greater than that possessed by the adult grantor of the infant. But the learned circuit court in the instant case held the defendants entitled to greater rights than creditors or "others" can assert under sec. 2320, *supra,* and limited the plaintiffs in the assertion of rights which may be asserted by grantees whose grant is within the purview of said section. As in *Corry v. Shea, supra,* so under the findings in this case would

the deed under which the infants claim have been invalid to confer upon such infants any right or title which would stand in the way of the tax-title holder asserting any right which he could have asserted against the grantor of such infants. But where the voluntary conveyance to the infants did not and could not hinder, delay, or defraud, viz. as to all those rights and interests unaffected by the voluntary conveyance and which could have been as effectively and as easily asserted without the conveyance to the infants, or had that conveyance never been made, a different rule applies. For example, a mortgagee cannot complain of a subsequent conveyance of the equity of redemption as fraudulent, because his rights are in no manner injuriously affected. The conveyance is not void as to such rights. *Hodson v. Treat,* 7 Wis. 263.

"A creditor cannot impeach a conveyance without showing that he has been injured thereby, and, to entitle him to equitable relief, it is necessary for him to show that he has been thereby deprived of his remedy at law, and is therefore compelled to resort to equity." 20 Cyc. 419, cites cases from twenty-six states of this Union in support of the foregoing. In *A. D. Baker Co. v. Booher,* 153 Wis. 319, 141 N. W. 248, it was held that assuming the husband and wife joined in the conveyance to their sons, fraudulent as to creditors, taking back an agreement for support, and the wife in a subsequent divorce suit obtained a decree transferring to her as a final division of his property all the husband's interest in and to the land so conveyed to the sons, creditors of the husband suing afterward could not have the transfer set aside. Furthermore, a conveyance by husband to wife of the homestead cannot be considered fraudulent as to his creditors, because, being exempt from execution, it is no more beyond their reach after the conveyance than it was before. *Pike v. Miles,* 23 Wis. 164; *Shawano Co. Bank v. Koeppen,* 78 Wis. 533, 47

N. W. 723; *Bank of Commerce v. Fowler,* 93 Wis. 241, 67 N. W. 423; *Bartle v. Bartle,* 132 Wis. 392, 112 N. W. 471.

"According to natural and authoritative exposition, the statute was not intended to enlarge the rights of creditors further than might be necessary to enable them effectually to defeat the alienation made by the debtor; aside from this, creditors have no greater rights (under the statute of Elizabeth) against the alienee than they would have had against the debtor had there been no alienation." Bigelow, Fraud. Conv. (Revised ed. 1911) 52, 53.

Because a deed is invalid under sec. 2320 as against certain rights of the creditor or "other person," it is not necessarily invalid against every right which that creditor or other person may assert and which were not injuriously affected by the fraudulent conveyance.

Upon the findings these defendants never had title or right of action to assert title, which they could enforce against the grantor of the infant plaintiffs. Prior to his election to take a tax deed on the land, *Mr. Dike* had a lien by virtue of the certificates of tax sale. As against this lien the conveyance to the infants was invalid and ineffectual to hinder or delay foreclosure and sale. He still has that lien. But the voluntary and fraudulent conveyance to the infants did not give to *Mr. Dike* other or greater rights than he had against the grantor of the infants. He thereby acquired no right to take a tax deed without notice nor to refuse redemption within the time fixed for redemption by adult persons. On the other hand, the conveyance to the infants was good as between the parties to it and transferred to the infants all those rights in and to the land which the grantors themselves could assert against the tax-title holder had the conveyance not been made. *Home Inv. Co. v. Emerson,* 153 Wis. 1, 140 N. W. 283. For these reasons the tax-title holder cannot urge the fraudulent character of the deed to the infant plaintiffs to prevent them

from attacking his tax title upon grounds available to their grantor had the fraudulent conveyance never been made; nor deny them the right of redemption within the time redemption could have been made had the deed to the infants never been executed. Sec. 1165, Stats.

If we assume as most favorable to the respondents that these infants, at the time aged respectively twelve and fourteen years, by mere receipt of the title from their grantor, or by such receipt with knowledge of the purpose of the conveyance to them, were in equal delict with their grantor, they would not be thereby barred from maintaining this action. Their conduct, if it merited this condemnation, nevertheless did not affect the equitable relations between them and the defendants asserted in this action, or place the defendants in any worse position with reference to the rights here asserted than the latter would have been had no such conveyance been accepted. Their misconduct, if misconduct it was, is unconnected with the matter in litigation and did not concern or affect the title of the opposite party asserted in this action. 1 Pom. Eq. Jur. (3d ed.) § 397 *et seq.*

We consider the action one under sec. 3186, Stats., hence governed by sec. 1210*h*. The plaintiffs will be entitled to judgment upon the findings upon condition of their making the payments mentioned in the latter section. They are also entitled to have commissioners appointed in the special proceeding.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for plaintiffs in the action as above directed; and the order refusing to appoint commissioners and dismissing the special proceeding is reversed and remanded for further action in conformity with law. The appellants to recover one bill of costs in this court.